UNITED STATES, Appellee,

v.

Richard R. WHEELER, Private First Class, U.S. Army, Appellant.

No. 50840.

CM 443811.

U.S. Court of Military Appeals.

April 28, 1986.

Certiorari Denied Oct. 6, 1986.
See 107 S.Ct. 106.

For Appellant: *Colonel Brooks B. La Grua* (argued); *Colonel William G. Eckhardt, Lieutenant Colonel William P. Heaston, Captain Donna Chapin Maizel* (on brief); *Major Edwin D. Selby* and *Captain David L. Carrier.*

For Appellee: *Major Larry D. Williams* (argued); *Colonel James Kucera, Lieutenant Colonel Adrian J. Gravelle, Major Joseph A. Rehyansky* (on brief).

*Amicus Curiae On Behalf of Appellant: Michael Kaye,* Esq. (on brief); *Paul Oller,* Legal Intern-For the Washburn Law Clinic, Washburn University School of Law.

*Opinion of the Court*

EVERETT, Chief Judge:

Appellant was tried by a general court-martial at Fort Lewis, Washington, on December 13, 1982. Contrary to his pleas, the members of this court-martial found appellant guilty of two specifications of rape[1] and one specification of forcible sodomy, in violation of Articles 120 and 125, Uniform Code of Military Justice, 10 U.S.C. §§ 920 and 925, respectively. The sentence adjudged was dishonorable discharge, confinement for life, total forfeitures, and reduction to the lowest enlisted grade. The convening authority approved this sentence; and the Court of Military Review affirmed. 18 M.J. 823 (1984).

The Court granted review on the following issue of law:

WHETHER THE APPELLANT'S STATEMENT WAS THE PRODUCT OF PSYCHOLOGICAL COERCION AND THEREFORE INVOLUNTARY.

We hold that appellant's pretrial statements[2] were voluntary and therefore admissible against him at this court-martial. *See* Art. 31(d), UCMJ, 10 U.S.C. § 831(d);

---

1. Another specification alleging rape was dismissed by the military judge for lack of subject-matter jurisdiction. *Cf. O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969).

2. A typed pretrial statement contained a confession to the rape alleged in the specification dismissed for lack of jurisdiction. *See* n. 1, *supra.* In addition, Wheeler made various oral admissions relevant to the offenses of which he was convicted.

*United States v. Murphy*, 18 M.J. 220, 235 (C.M.A.1984) (Everett, C.J., and Fletcher, J., concurring in the result.)

The relevant facts, as summarized by the Court of Military Review, are these:

On 15 September 1982, after having been identified as the principal suspect in the second incident, appellant was taken into custody for questioning by military and civilian criminal investigators. Before interrogating him, both investigators advised appellant of his rights to remain silent and to obtain counsel, which appellant waived. Initially denying that he committed the offenses against Miss N., appellant eventually admitted to Special Agent Herring of the Fort Lewis Criminal Investigation Division that he was the perpetrator.

Special Agent Herring testified that he did not unlawfully coerce appellant into confessing, but that:

I basically appealed to his conscience, and told him that I didn't believe his stories that he'd been giving us up until then and he, at first, denied any involvement and then he said that he'd been praying to God alot about his problem, and that was the first kind of admission that he gave to me at all.

Q. What did he say?

A. He said that—his exact words were, "I've been praying to God a lot about my problem," without saying what the problem was. I understood it to be his crime. And, at that point I said, "Yes, I know that you have a problem, and you know that you have a problem and God knows that you have a problem." Tears welded [sic] in his eyes, and he continued saying things to the effect that he'd been praying a lot about it, and I said, "Would you be willing to pray to God right now to give you the strength to go ahead and get this off your chest and start living your life and turning your life around?" I got down on my knees with him and he was crying there, and he turned his head upward and said, *"I didn't mean to do it. I didn't mean to attack those women, God, I need help and strength."* And that lasted 30 seconds or so. We got back in our chairs and he drew his strength back up again and stopped crying, and looked at me and said, *"You're right. What you said was true. I did do it."*

18 M.J. at 824 (emphasis added).

At trial appellant moved to suppress his pretrial statements because they were induced by a CID agent's promise of help from a psychiatrist and because he had not been made aware that he could terminate the interview at any time. However, Special Agent Dale Herring, who conducted the interview, testified that no promise of psychiatric assistance was made to appellant and that he had responded to appellant's *post-confession* inquiry for psychiatric assistance by advising him to contact his unit or stockade personnel. Herring further testified that Wheeler had been fully advised of his legal rights, including the right to terminate the interview at any time, and had indicated that he understood these rights. The military judge found against appellant on this issue as a matter of fact; and we perceive no reason to overturn the ruling. *See United States v. Schneider,* 14 M.J. 189, 195 (C.M.A.1982). *See also Castleberry v. Alford,* 666 F.2d 1338, 1342, 1343 (10th Cir.1981).

Before the Court of Military Review, appellate defense counsel expanded the objection that appellant's statement had been improperly induced. He argued that Agent Herring's appeal to appellant's religious beliefs was psychologically coercive in view of his youth, limited intelligence, mental disorder (schizotypal personality) and his "Judeo-Christian" belief in "the cleansing power of confession." Accordingly, he concluded that a confession extracted in this manner under these circumstances was involuntary. *See Davis v. North Carolina,* 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966); *Gessner v. United States,* 354 F.2d 726 (10th Cir. 1965). *See also Brewer v. Williams,* 430 U.S. 387, 412, 97 S.Ct. 1232,

1246, 51 L.Ed.2d 424 (1977) (Powell, J., concurring).

Before this Court, appellant again contends that the totality of circumstances dictates the conclusion that his confession was involuntary. In its brief, amicus curiae also suggests that this Court establish a "bright line" rule forbidding invocation of an accused's religious beliefs by government agents in attempting to secure a confession. *See People v. Adams*, 143 Cal. App.3d 970, 192 Cal.Rptr. 290 (1983). However, we are not inclined to hold that an appeal to one's religious convictions is so inherently coercive that subsequently-obtained confessions are *per se* involuntary. *Cf. Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897). If this were true, the Supreme Court in *Davis v. North Carolina* and *Brewer v. Williams*, both *supra,* and the Court of Appeals in *Gessner v. United States, supra,* could have decided those cases without reference to other circumstances involved. Although we recognize that such an appeal can combine with other circumstances to produce an involuntary confession, *id.,* our examination of the record (*see Davis v. North Carolina, supra,* 384 U.S. at 741–42, 86 S.Ct. at 1764), leads us to agree with the military judge[3] and the Court of Military Review that appellant's confession was voluntary.

In reaching this conclusion, we first note that appellant testified that his confession was induced by the CID agent's promise of the assistance of a psychiatrist. Although this testimony was rejected by the trial judge as a matter of fact, Wheeler's failure even to mention Herring's religious appeal indicates that it could have had only minor impact. *Cf. Barrera v. State*, 99 Wis.2d 269, 298 N.W.2d 820, 830 (Wis.1980). Second, appellant voluntarily waived his Article 31 rights and consented to answer the CID agent's questions before the topic of religion had been mentioned. *Cf.* III Wigmore, *Evidence* § 840 (Chadbourn rev. 1979). This conduct, coupled with his later statements, is consistent with a self-induced decision to speak. Third, it was Wheeler, not the investigators, who injected the topic of religion into the interrogation process. While this fact does not rule out the possibility of psychological coercion, it reduces the likelihood that the interrogator was using a religious appeal as a means to destroy Wheeler's freedom of will. Fourth, Herring's appeal to appellant's religious beliefs—which were not detailed on the record—was general in nature and amounted to no more than an appeal to his conscience. As pointed out by Justice Frankfurter in *Culombe v. Connecticut,* 367 U.S. 568, 576, 81 S.Ct. 1860, 1864, 6 L.Ed.2d 1037 (1961), "The police may be midwife to a declaration naturally born of remorse, or relief, or calculation." Finally, the interrogation lasted for but one hour (*cf. Davis v. North Carolina, supra)*; appellant was fully advised of his rights by both a civilian investigator and a military investigator (*cf. Gessner v. United States, supra)*; and his age of 22 and high school education suggest no defect in maturity or intelligence. *Cf. Culombe v. Connecticut, supra.*[4]

In summary, the religious beliefs of appellant may have motivated him to make his confession. *See* O. Rogge, *Why Men Confess* 210–12 (Thomas Nelson & Sons, New York, 1959). However, a confession so motivated is neither unreliable (*see* Wigmore, *supra,* § 840) nor involuntary. *See*

---

**3.** Under the Military Rules of Evidence in effect at the time of appellant's trial, the members no longer determined the admissibility of a confession. Mil.R.Evid. 304(e)(2); *see also* Drafters' Analysis, App. 22, Manual for Courts-Martial, United States, 1984; S. Saltzburg, L. Schinasi, D. Schlueter, *Military Rules of Evidence Manual* 80–81 (1981).

**4.** We have considered the testimony of the psychiatrist offered by the defense during the sentencing portion of appellant's court-martial. This testimony was not directed towards his capacity to give a voluntary confession or whether he did so in this case. In any event his psychiatric condition —neither by itself nor with other factors in this case—rendered his confession involuntary. *Cf. Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960).

*generally Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 1291, 84 L.Ed.2d 222 (1985). Moreover, no authority has been presented to this Court which convinces us that a person with religious beliefs is *per se* incapable of making a voluntary confession. *See Barrera v. State, supra* 298 N.W.2d at 831[5]. Where the appeal to religious beliefs amounts to "no more persuasion to the defendant than the usual adjuration ... to speak the truth," no improper inducement

occurs. *Smith v. State,* 248 Ala. 363, 27 So.2d 495, 497 (1946). While there is the possibility that a religious appeal by itself or in conjunction with other circumstances might cross the line of intimidation (*see* Wigmore, *supra,*) we conclude this was not true in appellant's case.

The decision of the United States Army Court of Military Review is affirmed.

Judge COX concurs.

---

**5.** To whatever extent *People v. Adams,* 143 Cal. App.3d 970, 192 Cal.Rptr. 290 (1983), suggests the contrary, we disagree with that precedent.