UNITED STATES, Appellant,

v.

Wayne E. STEWARD, Captain, U.S. Air Force, Appellee.

No. 63,742.
ACM 27628.

U.S. Court of Military Appeals.

Argued March 15, 1990.

Decided Sept. 27, 1990.

For the Accused: *Captain Darla G. Orndorff* (argued); *Colonel Richard F. O'Hair* (on brief).

For the United States: *Major Paul H. Blackwell, Jr.* (argued); *Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie* (on brief).

*Opinion of the Court*

SULLIVAN, Judge:

During January 1989, the accused was tried by a military judge sitting alone as a general court-martial at Grissom Air Force Base, Indiana. Contrary to his pleas, he was found guilty of violating a lawful general regulation by possessing drug-abuse paraphernalia; wrongful use of marijuana, and wrongful possession of marijuana, in violation of Articles 92 and 112a, Uniform Code of Military Justice, 10 USC §§ 892 and 912a, respectively. He was sentenced to dismissal, confinement for 2 months, total forfeitures, a fine of $10,000.00 and additional confinement of 1 year if the fine is not paid. The convening authority approved the sentence as adjudged. The Court of Military Review (one judge dissenting) set aside the findings and sentence. 29 MJ 724 (1989). A petition for reconsideration (en banc) was denied by that court on November 2, 1989.

Pursuant to Article 67(b)(2), UCMJ, 10 USC § 867(b)(2), the Judge Advocate General of the Air Force certified the following issue for review by this Court:

WHETHER THE AIR FORCE COURT OF MILITARY REVIEW ERRED AS A

MATTER OF LAW BY HOLDING THAT THE PRE–RIGHTS STATEMENT BY INVESTIGATORS CREATED A PRESUMPTIVE TAINT SO GREAT THAT IT COULD NOT BE CUT OFF BY A RIGHTS WARNING, UNDER THE FACTS AND CIRCUMSTANCES OF THIS CASE, IN ACCORDANCE WITH *UNITED STATES V. BYERS,* 26 M.J. 132 (CMA 1988).

We hold that the Court of Military Review erred in reversing the military judge on the basis of the "presumptive taint" doctrine and remand this case to that court for reconsideration on the broader question of the voluntariness of the accused's confession. *See Oregon v. Elstad,* 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985); *United States v. Byers,* 26 MJ 132, 135 (CMA 1988).

The military judge made the following findings of fact and ruling of law on the accused's suppression motion:

MJ: The court makes the following findings of fact:

On the morning of 3 June 1988, Lieutenant Colonel Richard Fanjoy, Commander, 305th Air Refueling Squadron, called Captain Wayne E. Steward, the accused, and asked him to come to his office. As a result, Captain Steward reported to Lieutenant Colonel Fanjoy's office at approximately 1130 hours after dropping his daughter off at the child care center. · Sometime thereafter, Lieutenant Colonel Fanjoy escorted Captain Steward to the AFOSI [Office of Special Investigations] offices located on Grissom Air Force Base, Indiana, and then departed.

Once at the OSI office, Captain Steward waited approximately ten to fifteen minutes in the lobby area until Special Agent Steven Clark arrived. Agent Clark then escorted Captain Steward to the interrogation room where the accused waited another approximately ten to fifteen minutes. At approximately 1241 hours, Special Agent Clark and Sergeant Clifford Johnson, 305th Security Police Investigations, entered the interrogation room and began to question Captain Steward.

MJ: The interview began when Special Agent Clark told Captain Steward that *"Wayne, from this point on you are grounded. You can either cooperate with us and try to get your wings back or lose your wings forever,"* or words to that effect. In response to this statement, Captain Steward asked, "Why?" Special Agent Clark then told Captain Steward that he was suspected of using marijuana. This conversation took less than three minutes. After this conversation, Special Agent Clark and Sergeant Johnson showed Captain Steward their badges. Special Agent Clark then read Captain Steward his Article 31 rights and his rights to counsel as provided by *United States v. Tempia* [16 USCMA 629, 37 CMR 249 (1967)]. Special Agent Clark utilized a rights advisement card. The accused affirmatively waived his rights.

MJ: The reason the accused initially agreed to talk with the investigators was the hope of satisfying their curiosity about the allegation without incriminating himself. Special Agent Clark then continued with the interview by telling Captain Steward that OSI had evidence that he had smoked marijuana. Sergeant Johnson was present as an observer.

MJ: At the time of the interview, the accused was twenty-nine years old, a captain in the Air Force, and a graduate of the University of Miami. At the time of the interview and presently, the accused speaks, reads, and understands english easily. The accused has completed undergraduate pilot training and at the time of the interview had approximately seven years active service. At the time of the interview, the accused was in good health and in good mental condition.

MJ: The room where the interview took place, contained a table, chair, couch, and a two-way mirror. There were no bars on the windows or weapons displayed. The accused was seated in a

gray metal standard Air Force chair. The interview was conducted in a relaxed atmosphere in a low key serious manner. At some time during the remainder of the interview, Special Agent Clark told Captain Steward that he, Special Agent Clark, knew how important Captain Steward's wings were to him because he, Clark, had been a pilot and had lost his wings too, or words to that effect.

MJ: Special Agent Clark also repeatedly told Captain Steward words to the effect that the accused's conduct during the interview would be reported and this report would include a report as to whether or not the accused cooperated and whether or not the accused lied as the case may be. Whatever the conduct was during the interview, it would be reported to Colonel Stampfli, who the accused believed at that time would be the decision maker as to his flying status.

MJ: At approximately 1315 hours, Special Agent Clark asked Captain Steward for consent for a urinalysis and consent for search of his house and car. Thereafter, Captain Steward completed a written consent form, Prosecution Exhibit 2, in his own handwriting, agreeing and consenting for urinalysis and search of his car.

MJ: After completing that form Sergeant Johnson asked the accused what the results would be or words to that effect. The accused stated words to the effect that it "should" come back clean. Focusing on the equivocal nature of the word "should," Sergeant Johnson continued to question the accused and the accused admitted his use of marijuana.

MJ: The court accepts the accused's testimony that he made this admission because there was "no sense lying any more." At approximately 1330 hours, the accused agreed to make a written statement. This sworn statement, Prosecution Exhibit 3 for identification, was completed at approximately 1412. Prior to making the actual written statement, the accused was again readvised of his rights under Article 31 as well as *Miranda* and *Tempia,* via the 1171 I believe—excuse me 1168. Air Force Form 1168, which is the first page of Prosecution Exhibit 3 for identification.

MJ: Now conclusions of law: The court finds that the statement of Special Agent Clark prior to advisement of rights was an interrogation within the meaning of Article 31, but this court concludes, as the Court did in the case of *United States v. Byers,* 26 MJ 132, Court of Military Appeals 1988, that it did not create a presumptive taint so great that it could not be cut off by a rights warning as well as the other facts and circumstances of this case.

MJ: Just to make sure that that's clear, since I used a double negative in there. I am convinced that this statement—I am unconvinced that this statement created a presumptive taint so great that it could not be cut off by the rights warning as well as the other facts and circumstances in this case.

MJ: In that this was but one circumstance to be considered along with all the others in determining whether the statement made by the accused after receiving the warning was voluntary.

MJ: I find by a preponderance of the evidence that the accused's statements, both oral and written, were voluntary. They were not obtained through the use of unlawful coercion, unlawful influence, or unlawful inducement. Now, I recognize that the accused may have been motivated to make the statements by a desire to save his wings, and that this inner desire on the part of the accused may well have been known to the interrogators. However, under the circumstances of this case, I find as a matter of law, that telling a suspect of the expected consequences of his crime—of the crime under investigation rather, and telling the suspect that his conduct during the interview would be reported to the key decision

maker, does not render the statement involuntary. And in this respect, I observe that the Court of Military Appeals has held in the case of the *United States v. Robinson,* 26 MJ 362 and page 367, that's Court of Military Appeals 1988 case. That even inner compulsions on the part of a suspect known to the interrogators, do not necessarily render a statement involuntary.

Motion—denied.

(Emphasis added.)

The Court of Military Review accepted the military judge's findings of fact but not his conclusions of law. It said, *inter alia:*

It was the agent's remarks to the appellant prior to the rights advisement that raises the legal issue in this case. We accept as a given factor that the remark created a presumptive taint with respect to incriminating statements subsequently provided by the appellant. This conclusion is compelled by our understanding of the Court of Military Appeals' analysis in *United States v. Byers,* 26 MJ 132 (CMA 1988), and is otherwise implicit in the findings and conclusions of the military judge.

\*      \*      \*      \*      \*      \*

We accept the military judge's essential findings of fact. We do not accept his conclusion, based on the facts, that the rights advisement was sufficient to erase the taint of Agent C.'s introductory remark: *"Wayne, from this point on you are grounded. You can either cooperate with us and try to get your wings back or lose your wings forever,"* or words to that effect. We find that the military judge erred in denying the defense motion to suppress the appellant's incriminatory statements.

\*      \*      \*      \*      \*      \*

In the case at hand, we conclude that the taint of Agent C.'s remark was not erased by the rights advisement. Indeed, it was reinforced throughout the course of the interview by C.'s sympathetic reference to his own prior experi-

ence as a pilot and, more importantly, references to the report to be made to the wing commander of Captain Steward's "conduct" during the interview. We cannot avoid facing the reality that a trained interrogator (particularly one engaged in a "wing and a prayer" interview) has to hope above all else that a suspect will talk, only if to deny any wrongdoing. See the discussion of interrogation techniques in *United States v. Whitehead,* 26 MJ 613, 618–19 (ACMR 1988). An interrogator, however, is not entitled to do so by enticing "cooperation" prior to a rights advisement and, subsequently, reinforcing *such improper enticement.* This is clearly what occurred in the case at hand.

\*      \*      \*      \*      \*      \*

This is not as clear a distinction from the case at hand. However, we note that while Agent C. spoke of the appellant's and his own flying status in somewhat general terms, he purported to offer hope of a tangible benefit to the appellant, restoration to flying status. *In the case before us, the pre-advisement appeal to the appellant's compulsion to continue flying constituted an improper inducement.*

In acknowledging that he became convinced that there was no use in continuing to lie to Agent C. and SSgt J., the appellant was doing no more than conceding that his resolve to "stonewall" the situation had been overcome by the talents of trained interrogators. The primary question before us is whether the appellant was encouraged to follow the questionable, and short-lived, strategy of "stonewalling" rather than relying on his right to remain silent or seeking the advice of counsel by the carrot skillfully placed before him before the interview commenced. The key is that Captain Steward elected to talk to the investigators, however untruthfully at first, rather than asserting his Article 31 rights. Nothing in the appellant's testimony overcomes the premise that, in so doing he was attempting to preserve his flying

status, however, irrational that expectation might seem in retrospect. The fact that the appellant, at a rather early time in the interview process, realized there was no use in continuing to lie does nothing whatsoever to separate him from any other suspect under interrogation who recognizes at some point in an interview that the game is up.

\*     \*     \*     \*     \*     \*

The military judge properly noted that an interrogator may exploit a suspect's inner desire or motivation when it becomes apparent. However, ... this case involves more than an opportune exploitation. The interrogator first planted the motivational seed prior to a rights advisement. As *Byers* suggests, this form of psychological manipulation is not permitted. We suspect that the appellant would have been motivated to save his flying career in any event. However, we have no basis for concluding that he would have imagined it feasible to do so by "cooperating" with the interrogators in the absence of the pre-advisement inducement, as reinforced following the advisement.

29 MJ at 725, 727–29 (emphasis added; footnote omitted).

---

Our review of the holding of the court below begins with Article 31, UCMJ, 10 USC § 831, which states:

*Compulsory self-incrimination prohibited*

(a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

(b) No person subject to this chapter may interrogate, or request any statement from an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

(c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

We note that Article 31(b) provides technical[1] warning requirements similar to those prescribed in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and Article 31(a) and (d) provide the Fifth Amendment substantive due process protection against involuntary confessions delineated in *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897).

We next observe that in his pretrial motion to suppress, the accused asserted that Agent Clark's pre-rights statements to him were illegal interrogation under Article 31(b) which tainted his subsequent post-rights confession. He also asserted that Agent Clark's reference to these comments throughout the post-rights interview created a coercive environment which induced his confession in violation of Mil.R.Evid. 304(c), Manual for Courts–Martial, United States, 1984. *See* Art. 31(d). These separate but nonetheless related arguments were rejected by the judge. He found that the premature questioning by the investigator was error under Article 31(b) but it was dissipated by later warnings. He also found that the subsequent confession of the accused was voluntary and "not obtained through the use of unlawful coercion, unlawful influence, or unlawful inducement."

---

1. We use the word "technical" in the same sense intended by the majority of the Supreme Court in *Oregon v. Elstad*, 470 U.S. 298, 318, 105 S.Ct. 1285–1297, 84 L.Ed.2d 222 (1985).

The Court of Military Review, however, held that the judge erred in admitting the accused's confession. It agreed with his holding that the investigator's pre-advice comments violated Article 31(b) because they constituted premature interrogation prohibited by *United States v. Byers, supra. See generally Pennsylvania v. Muniz,* —— U.S. ——, 110 S.Ct. 2638, 2650 n.14, 110 L.Ed.2d 528 (1990). Nevertheless, it held that the presumptive taint of this illegality was not dissipated by subsequent warnings because of the post-advice reference to the earlier comments by the investigator. The court below in the process of reaching this conclusion further implied that the investigator's comments might constitute an improper inducement regardless of when they were made. 29 MJ at 729. *See* Art. 31(d). *Cf. United States v. Wheeler,* 22 MJ 76 (CMA), *cert. denied,* 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986).[2]

■ Our first problem with the decision of the Court of Military Review is the legal analysis which it employed in overturning the judge's ruling. The court below in its

October 3, 1989, decision expressly relied on the doctrine of "presumptive taint" purportedly established by this Court in *United States v. Byers, supra.* However, in *Byers,*[3] this Court found there was no presumptive taint where an earlier Article 31(b) technical violation produced no admission from a suspect prior to a subsequent warned confession. *See United States v. Schake,* 30 MJ 314, 320 (CMA 1990). In *United States v. Ravenel,* 26 MJ 344 (CMA 1988), both Judge Cox and I expressly disassociated ourselves from Chief Judge Everett's embrace of the doctrine of presumptive taint. This occurred in a case where a technical violation of Article 31(b) even produced an admission from an accused prior warnings and a later confession. In *United States v. Spaulding,* 29 MJ 156 (CMA 1989), a case decided on September 27, 1989, the majority of this Court again disavowed this doctrine in the unwarned admission context. *See Oregon v. Elstad,* 470 U.S. at 317–18, 105 S.Ct. at 1297–98. Accordingly, to the extent the court below found only a technical violation of Article 31(b) in this case, its resort to the presumptive taint doctrine was legal error.[4]

---

2. We find the opinion below ambiguous in this regard. It does not clearly state whether the pre-advice comments were improper because of their timing alone or because they otherwise constituted unlawful inducements. The former is an Article 31(b) question and the latter is an Article 31(d) question. The decision of this Court in *United States v. Byers,* 26 MJ 132 (CMA 1988), the case most relied on by the majority opinion below, dealt with the Article 31(b) problem alone. *Cf.* Drafter's Analysis of Mil.R.Evid. 304(c)(2), Manual for Courts–Martial, United States, 1984, at A22–10 (Change 2).

3. This Court in *United States v. Byers, supra* at 135, admittedly employed the language of "presumptive taint" in a situation where no statement was produced by the unwarned interrogation. However, we subsequently said in this same opinion:

   Instead, we conclude that his noncompliance with Article 31(b) was one circumstance to be considered along with others in determining whether the statements made by appellant after receiving a warning were voluntary.

   The Supreme Court similarly held in *Oregon v. Elstad, supra* at 309, 105 S.Ct. at 1293, 1296, with respect to mere technical violations of *Miranda v.*

*Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

4. Some type of "presumptive taint" approach to admissibility of the accused's warned confession might be appropriate if the earlier technical violation of Article 31(b) was accompanied by actual coercion in violation of Article 31(d). The Supreme Court in *Oregon v. Elstad, supra* at 309, 105 S.Ct. at 1293, suggested the same for technical violations of *Miranda:*

   If errors are made by law enforcement officers in administering the prophylactic *Miranda* procedures, they should not breed the same irremediable consequences as police infringement of the Fifth Amendment itself. It is an unwarranted extension of *Miranda* to hold that simple failure to administer the warnings, *unaccompanied by any actual coercion or other circumstances calculated to undermine the suspect's ability to exercise his free will, so taints the investigatory process* that a subsequent voluntary and informed waiver is ineffective for some indeterminate period. Though *Miranda* requires that the unwarned admission must be suppressed, the admissibility of any subsequent statement should turn in these circumstances solely on whether it is knowingly and voluntarily made.

■ In addition, Chief Judge Everett's presumptive-taint analysis permits rebuttal of such a taint and admission of a subsequent confession in certain circumstances. *Cf. Oregon v. Elstad, supra* at 307, 105 S.Ct. at 1292. These circumstances are where the challenged confession was not obtained by use of a prior unwarned statement or where it would have been obtained even if the unwarned statement had not been made. *See United States v. Spaulding, supra* at 162; *United States v. Ravenel, supra* at 350–51. Such an attenuation or dissipation approach is particularly inappropriate in a case such as the accused's where there is no initial tainting statement and proper advice is provided before the confession. *United States v. Schake, supra* at 320; *United States v. Spaulding, supra* at 162 (Cox, J., concurring). The appropriate legal inquiry [5] in such a case is whether his subsequent confession was voluntary *considering all the facts and circumstances of the case* including the earlier technical violation of Article 31(b). *Oregon v. Elstad, supra* at 318, 105 S.Ct. at 1297; *United States v. Byers, supra* at 135. The court below noted this standard but never expressly resolved this question. *United States v. Steward, supra* at 727.

Finally, we note that the Court of Military Review intimates somewhat obliquely that Agent Clark's comments concerning the reacquisition of the accused's flight status constituted an unlawful inducement or enticement to confess. *See* Art. 31(d); *see generally Bram v. United States, supra* at 542–43, 18 S.Ct. at 186–87; White, *Police Trickery In Inducing Confessions,* 127 Penn. L. Rev. 581, 617–23 (1979). In particular, the court focused on the "car-

rot" nature of his comments which held out some slim "hope" to a pilot that his cooperation with police might lead to restoration of his flying status. *See Illinois v. Perkins,* — U.S. ——, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990). *Cf. Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 520–21, 93 L.Ed.2d 473 (1986); *United States v. Wheeler, supra.* The legal authority for concluding such a vacuous statement was unlawful in these circumstances was not provided by the court below.

Federal civilian practice does not support a finding of involuntariness simply because a police officer told a suspect in a noncommittal manner that he would call the appropriate authorities' attention to a suspect's cooperation with police. *See United States v. Alvarado,* 882 F.2d 645, 650 (2d Cir. 1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1114, 107 L.Ed.2d 1021 (1990); *United States v. Leon Guerrero,* 847 F.2d 1363, 1367 (9th Cir.1988); *United States v. Pelton,* 835 F.2d 1067, 1073 (4th Cir.1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. Guarno,* 819 F.2d 28, 30–31 (2d Cir.1987); *Layne v. State,* 542 So.2d 237, 240–41 (Miss.1989). However, a specific threat to report a suspect's failure to cooperate with police to appropriate authorities may render a subsequent confession involuntary in these same courts, assuming it is the motivating factor in the suspect's decision to speak.[6] *Cf. United States v. Crespo de Llano,* 838 F.2d 1006, 1015–16 (9th Cir. 1987); *United States v. Pelton, supra* at 1072–73; *United States v. Tingle,* 658 F.2d 1332, 1336 n.5 (9th Cir.1981). *See generally United States v. Spaulding, supra* at 161. Consideration of the voluntariness

---

(Emphasis added.) *Cf. Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). The opinion below stops short of such a holding in the present case. Instead it holds that the post-advice and waiver statements of the investigator, which refer to the pre-advice comments, precluded any dissipation of the earlier technical violation of Article 31(b).

**5.** The initial comments of Agent Clark might also have raised questions concerning the adequacy of his subsequent rights advice to the

accused. *See generally* 3 Wigmore, *Evidence* § 832 n.5 (Chadbourn rev.1970). This theory was not pursued at trial or on appeal. *See* LaFave and Israel, *Criminal Procedure* § 6.9.(c) (1984).

**6.** The investigator's comments reasonably suggest that the "stick" employed therein was that the accused's flying status would never be restored if he did not cooperate with police in his own criminal investigation.

question in light of these decisions as well would be particularly appropriate. *See United States v. Johnson*, 9 USCMA 591, 26 CMR 371 (1958); *cf. United States v. McKay*, 9 USCMA 527, 26 CMR 307 (1958).

The decision of the United States Air Force Court of Military Review setting aside the findings and sentence is reversed. The record of trial is returned to the Judge Advocate General of the Air Force for resubmission to that court for further review.

Judge COX concurs.

EVERETT, Chief Judge (dissenting):

The majority opinion contains references to "technical violations" of *Miranda, see, e.g.*, note 3 at 264 and the "technical violations" of Article 31(b) in *United States v. Byers*, 26 MJ 132 (CMA 1988). This terminology gives me considerable concern. I do not consider that failure to warn a suspect of his rights in violation of *Miranda* involves a technicality, and I do not believe that failure to comply with a requirement clearly expressed in Article 31(b) is a technicality.

In *Byers*, the OSI agent tried to soften up the accused by talking to him extensively before giving him the warning mandated by Congress. Our Court stated, "Even though Special Agent Fleishman's tactics did not conform with Article 31(b), we are unconvinced that they created a presumptive taint so great that it could not be cut off by a rights warning." 26 MJ at 135. The premise was that the OSI investigator had violated a statutory requirement but the Government had established that, despite this violation, the accused's pretrial statement was voluntary and not the product of the violation.

In this context, the term "presumptive taint" simply expresses the common-sense notion that, if, in obtaining a statement from a suspect, a government agent or representative violates an important right conferred on him by the Constitution or by a statute, then the Government bears the burden of proving that the statement was not the product of the violation.

In *Byers*, where the accused had made no statement before being warned of his right to remain silent, we concluded that the Government had adequately established that the statement was voluntary and not the product of the agent's failure to warn the accused before beginning the interrogation. In the present case, the lecture by the OSI agent to Steward was much briefer than that given to Byers; and here, too, the accused made no statement before receiving a warning of his rights. Not surprisingly the military judge specifically determined that, under the circumstances, the "presumptive taint" had been overcome by the Government.

The Court of Military Review, however, made a different determination. It found that Steward's pretrial statement was, at least in part, the result of the OSI agent's failure to comply with Article 31(b). In so doing, the judges of that court substituted their judgment for that of the military judge. Under Article 66(c) of the Code, 10 USC § 866(c), Congress has empowered them to do exactly that. On the other hand, under Article 67(d) of the Code, 10 USC § 867(d), my Brothers and I are not empowered to substitute our factual determination for that of the court below.

Accordingly, I would answer the certified question in the negative and affirm the decision of the United States Air Force Court of Military Review.