**UNITED STATES, Appellee,**

v.

**Dana S. VITALE, Senior Airman
U.S. Air Force, Appellant.**

No. 66,590.

ACM 28816.

U.S. Court of Military Appeals.

Argued Jan. 9, 1992.

Decided May 11, 1992.

For Appellant: *Major Marilyn A. Gordon* (argued); *Colonel Jeffrey R. Owens* (on brief); *Major Ronald A. Gregory.*

For Appellee: *Captain Carlos L. McDade* (argued); *Lieutenant Colonel Brenda J. Hollis* (on brief); *Major Ann M. Mittermeyer.*

*Opinion of the Court*

COX, Judge.

This case requires us to consider whether inculpatory admissions should have been excluded from evidence at this court-martial. Art. 31(b), Uniform Code of Military Justice, 10 USC § 831(b). 34 MJ 17 (1991). After a review of the circumstances present here, we hold that this appellant's admissions were made spontaneously; they were not the product of an interrogation or request for a statement; and thus, they were properly admitted. *United States v. Miller,* 7 MJ 90 (CMA 1979).

Appellant served as a medical technician at the Family Practice Clinic, MacDill Air Force Base, Florida, where it was his duty to admit patients and to conduct preliminary screenings for physical examinations, *e.g.,* recording body temperature, pulse, blood pressure, height, and weight. He was convicted of committing an indecent assault upon a female patient by exceeding the scope of his duties and conducting his own version of breast and pelvic examinations.[1]

When the incident occurred, the victim complained to the attending physician. He referred her to the "Hospital Patient Advocate," Senior Master Sergeant Brown, Superintendent of Hospital Services, who was

---

1. Appellant was tried by a military judge sitting as a general court-martial. He was sentenced to a bad-conduct discharge, 15 months' confinement, total forfeitures, and reduction to airman basic. The convening authority approved the adjudged sentence, and the Court of Military Review affirmed the findings and sentence in an unpublished opinion dated March 21, 1991.

tasked with listening to and answering patient complaints. After taking the victim's statement, Brown summoned appellant and interviewed him. He asked appellant "if he knew why he was there, and he said, I guess I did something wrong.'" Brown then excused the victim and advised appellant of his rights under Article 31(b), reading the advisement from "a little card that ha[d] the Miranda rights on one side, and the Article 31 on the other side." As Brown recreated it in court, he told appellant:

> This is "Advisement of Rights—Military." I'm Senior Master Sergeant Brown, Superintendent of Hospital Services. I am investigating the alleged offense of a patient complaint of which you are suspected. I advise you that under the provisions of Article 31 of the UCMJ, you have the right to remain silent, that is, to say nothing at all. Anything you do say may be used as evidence against you in a trial by courts-martial or other judicial or administrative proceedings. I advise you, also, that you have the right to consult with a lawyer if you desire, and to have a lawyer present during this interview. You may obtain a civilian lawyer of your own choosing at your own expense, or if you wish, the Air Force will appoint a military lawyer for you free of charge. You may request a lawyer at any time during this interview, and if [you] decide to answer any questions without a lawyer present, you may stop the questioning at any time. Do you understand your rights? Do you understand what I'm investigating? Do you want a lawyer?

When Brown asked appellant "if he understood his rights" and "if he wanted a lawyer," he responded "yes" and "no," respectively.

At trial, the military judge ruled that the warnings given by Brown were inadequate because appellant had not been told specifically which offense he was accused of having committed. Instead, Brown simply advised appellant: "I am investigating the alleged offense of a patient complaint of which you are suspected." Thus, a technical violation of Article 31(b) occurred.[2]

After Sergeant Brown completed his interview, appellant was taken to his First Sergeant, Sandra Williams. In her Stipulation of Expected Testimony, Sergeant Williams stated:

> On the afternoon of 26 February 1990, MSgt Green brought Sergeant Vitale to my office. I told Sgt Vitale that I was not going to advise him of his rights, because I did not want to get involved. I said, "Apparently, SMSgt Brown wants to get involved, and that's why he read you your rights, but I am not going to get involved." I told him that I was going to take him to the OSI [3] and that they would read him his rights. While on the way, Sgt Vitale said he was sorry, twice. I did not question him about this, or any other matter. Sgt Vitale told me that, "I have ruined my chances of being a doctor." He said that what he did was stupid. I told Sgt Vitale to shut up[;] I didn't want to hear him talk, and that he would have the opportunity when he met with the OSI. I never intended, nor did I solicit statements from Sgt Vitale about this matter. His statements were made voluntarily.

At the OSI office, appellant was advised of his rights under Article 31(b), and he requested an attorney. The interrogation ceased.

---

2. The military judge ruled that the technical violation of Article 31(b) left a "presumptive taint" on appellant's subsequent statements. This would not be the case when subsequent statements are independent of, and not obtained by use of, a previous statement ruled violative of Article 31(b). Moreover, this Court has held that a technical violation of Article 31(b) does not trigger a presumptive taint. *United States v. Steward,* 31 MJ 259, 264 (CMA 1990); *United States v. Spaulding,* 29 MJ 156 (CMA 1989);

*United States v. Byers,* 26 MJ 132 (CMA 1988); *see also United States v. Ravenel,* 26 MJ 344 (CMA 1988) (separate opinions of Cox, J., and Sullivan, J.). However, for purposes of this appeal, neither the correctness of the military judge's ruling nor the adequacy of Brown's Article 31(b) warnings are before us. *See also Duckworth v. Eagan,* 492 U.S. 195, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989).

3. Office of Special Investigations.

At trial, appellant moved to suppress the statements he had made to Sergeants Brown and Williams. The motion was thoroughly briefed and litigated. The military judge held that Senior Master Sergeant Brown had conducted an unlawful interrogation by questioning appellant before providing Article 31(b) warnings and by continuing to question appellant after administering legally-defective Article 31(b) warnings. But the military judge ruled that statements appellant had made to Sergeant Williams "were spontaneous and not the product of interrogation ... [or] unlawful ... inducement...." The Court of Military Review affirmed the military judge's decision in an unpublished opinion dated March 21, 1991.

Before this Court, appellant again challenges admissibility of his statements to Sergeant Williams, asserting that they arose from a coercive atmosphere tainted by the prior unlawful interrogation conducted by Senior Master Sergeant Brown. Furthermore, he asserts that when Sergeant Williams took him from the hospital to the OSI office, she unlawfully induced his statements and she was acting under an affirmative duty to administer Article 31 warnings to him. We do not agree.

■■■ It is clear from the evidence presented in the record that appellant's statements to Sergeant Williams were voluntary. The fact that Brown had advised appellant of his rights, albeit not perfectly, also supports a finding that his statements were voluntary. *See United States v. Steward*, 31 MJ 259 (CMA 1990). Furthermore, spontaneous statements, although possibly incriminating, are not within the bounds of Article 31. *United States v. Miller, supra; United States v. Anderson*, 21 MJ 751 (NMCMR 1985); *United States v. Barnes*, 19 MJ 890 (ACMR 1985), *aff'd* 22 MJ 385 (CMA 1986) (summary disposition). *See also United States v. Dohle*, 1 MJ 223 (CMA 1975). Appellant's statements to Williams were uttered spontaneously, voluntarily, and without coercion. Williams did not initiate any questions or interview. Rather, she warned appellant that she did not want to get involved; and she told him, quite clearly, not to discuss the matter with her, to let OSI handle it. Her conduct cannot be interpreted as a tool to elicit incriminating evidence or a functional equivalent of interrogation. *See Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980). Moreover, her actions left her under no duty to give appellant Article 31(b) warnings. *United States v. Duga*, 10 MJ 206 (CMA 1981); *see United States v. Erie*, 29 MJ 1008 (ACMR 1990).

When the "evidence of record supports factual determinations made at the trial level and affirmed by the Court of Military Review," we will not overturn those findings. *United States v. Wilson*, 6 MJ 214, 215 (CMA 1979).

The decision of the United States Air Force Court of Military Review is affirmed.

Chief Judge SULLIVAN and Judges CRAWFORD, GIERKE, and WISS concur.