UNITED STATES, Appellee,

v.

William E. KLINE, Sergeant First Class U.S. Army, Appellant.

No. 66,645.

CM 9000335.

U.S. Court of Military Appeals.

Argued Feb. 10, 1992.

Decided Sept. 25, 1992.

For Appellant: *Captain Michael Huber* (argued); *Lieutenant Colonel James H. Weise* and *Captain Alan M. Boyd* (on brief); *Colonel Robert B. Kirby, Major Michael J. Kelleher, Captain Timothy P. Riley, Captain Cynthia J. Rapp.*

For Appellee: *Captain Robert J. Walters* (argued); *Colonel Dayton M. Cramer, Lieutenant Colonel Daniel J. Dell'Orto, Major Joseph C. Swetnam* (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

During November 1989 and January 1990, appellant was tried by a general court-martial composed of officer members at Fort Lewis, Washington. Contrary to his pleas, he was found guilty of sodomy with his teenage daughter on several occasions, in violation of Article 125, Uniform Code of Military Justice, 10 USC § 925. He also was convicted of committing various indecent acts with this same daughter between November 14, 1986, and August

16, 1989, in violation of Article 134, UCMJ, 10 USC § 934. The members sentenced him to confinement for 3 years and reduction to E–4. The convening authority approved this sentence, and the Court of Military Review affirmed without opinion on May 3, 1991.

This Court, on September 30, 1991, granted review on the following issue raised by appellate defense counsel:

> WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT WHEN HE DENIED THE DEFENSE MOTION TO SUPPRESS APPELLANT'S STATEMENTS AND OTHER STATEMENTS DERIVED THEREFROM.

We hold that the military judge did not err when he partially denied the defense motion to suppress appellant's pretrial statements. *See United States v. Vitale,* 34 MJ 210 (CMA 1992); *United States v. Spaulding,* 29 MJ 156, 161 (CMA 1989). *See generally United States v. Steward,* 31 MJ 259 (CMA 1990).

Prior to trial on the merits, appellant made a motion to suppress evidence of various incriminating pretrial statements which he made to Sergeant Bacote, Captain Bockenstedt, Specialist Westbrook, and Mrs. Richardson. The military judge found the following facts and made the following conclusions of law concerning this motion:

> One, during midday, 16 August 1989, the accused called Madigan Army Medical Center, Department of Social Services, and spoke with Sergeant Bacote. This call was made after the accused's wife confronted him about the sexual abuse of his daughter and told him to obtain help, slash, turn himself in or she would contact his unit commander. I further find that the accused's wife—based upon the evidence adduced on this Motion—maintained this position with respect to the obtaining of help, or turning himself in as it related to the accused at least through the period of 21 August 1989 when she spoke with Mrs. Richardson and Specialist Westcott [sic].

> Two, I find that during the conversation which occurred between the accused and Sergeant Bacote, the accused reported that he knew a man with a problem and that the problem was sexual molestation of his daughter. In response to this information, Sergeant Bacote—consistent with her testimony—inquired of the caller, who was the accused, substantially as follows: Who is it we're talking about as the perpetrator of these actions? How long has this activity been going on? In sum, I find that the conversation occurred substantially as related by Sergeant Bacote.

> I further find—three—that before asking the identity of the perpetrator, Sergeant Bacote suspected that it was the accused. Despite the best efforts of counsel for both sides and myself, the witness made it clear that she had this, quote, unquote, gut reaction or gut feeling. This suspicion was generated by the accused's tone of voice during the conversation and the manner in which the conversation unfolded.

> Although not specifically addressed in any concise manner by counsel for either side in this case, I further find—four— that based upon her suspicion of the accused as the perpetrator of these actions, Sergeant Bacote was under a duty to warn him of his rights against compulsory self-incrimination, in accordance with Article 31 of the Uniform Code of Military Justice.

> Five, I find that this was not done.

> Six, I therefore rule that the defense motion to suppress the accused's statements to Sergeant Bacote during that telephone conversation on 16 August 1989, is granted. See the case of *U.S. v. McClelland,* 26 MJ, page 504, Army Court of Military Review, 1988.

> I further find—seven—that a short time later—that is, on the afternoon of 16 August—the accused went to the office of his unit Commander, Captain Bockenstedt, and spontaneously stated to that officer the following—or words to the effect of: *Quote, I have just turned*

*myself in for sexually molesting my daughter, unquote.*

Eight, I find that Captain Bockenstedt had no prior knowledge of this matter—that is, any sexual abuse involving the accused and his daughter—and was, at the time that statement was uttered, under no duty to warn the accused of any rights against compulsory self-incrimination.

Nine, I further find that that statement to the unit commander is not derivative evidence—that is, evidence derived from the statement to Sergeant Bacote. I find that Bacote did not tell the accused that his company commander, or any commander, would be informed of the disclosures made to her during that earlier conversation. And that the evidence adduced in support of this motion supports the *proposition that the accused was prompted to make this disclosure to his unit commander based upon his wife's earlier exhortations to turn himself in, slash, obtain help under threat of having this matter brought to the attention of his unit commander. And, as stated, I find it was her desire to pursue this course of action—at least up through the time she spoke with Mrs. Judi Richardson at Madigan Army Medical Center on the 21st of August of this [sic] year.*

Ten, I find that Captain Bockenstedt, after having been informed of this disclosure, then warned the accused of his rights against compulsory self-incrimination in some fashion. However, all disclosures made to him, and any conversation that took place between him and the accused after the initial disclosure made by the accused, will be suppressed. This is mandated simply because the Government has the responsibility of establishing, by a preponderance of the evidence, that such statements were voluntary. That simply hasn't been done. The manner in which any rights warning took place was not addressed, or raised, or established in any way, shape, or form.

Therefore, with regard to the defense motion to suppress statements made by the accused on 16 August to Captain Bockenstedt, the motion is granted in part and denied in part. *That is, the initial disclosure to the effect "I've just turned myself in for the sexual molestation of my daughter" will be admitted in evidence if offered.* Your Motion is denied insofar as that statement is concerned. The defense Motion to Suppress any further statements made after that initial disclosure is granted. Such statements include any representation or conversation to the effect of "I know I have to take my punishment" or words to that effect as raised by the evidence. Eleven, I find that regardless of whether the accused initially reported the sexual abuse of his daughter to Sergeant Bacote, once the unit Commander, Captain Bockenstedt, became aware of that sexual abuse, he would have independently notified Social Work Services of this action. I find that Captain Bockenstedt's testimony in this regard is clear, candid, and credible. *Simply stated, I find, by a preponderance of the evidence, that the accused's initial spontaneous disclosure to the unit commander was made voluntarily. It was not obtained by the use, or in any way derived from, the statement made by the accused to Sergeant Bacote.*

Now, moving along to address the statements made by the accused to Mrs. Judi Richardson in the presence of Specialist Westcott, I find—twelve—that the evidence adduced from the accused's wife, daughter, and himself, in a conversation which occurred between the accused and Mrs. Judi Richardson in the presence of Specialist Westcott on the 21st of August, was not evidence derived from the statement made by the accused to Sergeant Bacote on the 16th. Rather, it has an independent basis separate and apart from that conversation between the accused and Sergeant Bacote—namely, that it would have come to light, in any event, based upon Captain Bockenstedt's representations and testimony that he

would have, without doubt, contacted Social Work Services to report the disclosure made to him by the accused in his office on the afternoon of 16 August 1989.

I further find—thirteen—with regard to the admissions made to Richard—Mrs. Richardson in the presence of Specialist Westcott during the afternoon of 21 August 1989, I find that a bonafide legal issue exists regarding whether Mrs. Richardson was under any duty to warn the accused of his rights against compulsory self-incrimination at all. In this regard, I cite the *Moreno* case, M–O–R–E–N–O, at 25 MJ, page 523, Army Court of Military Review, 1987. However, neither counsel has quoted or cited the later entry pertaining to that case, also, at 28 MJ, page 152, which casts great doubt on the propriety of the earlier ruling. But, in any event, I note that based upon the manner in which the evidence was adduced, it would appear—with respect to *Moreno* rationale—that Specialist Westcott was an observer and really took no active part in the course of this conversation or interrogation. I note that parenthetically.

And further, in any event, I find that prior to interviewing the accused, Mrs. Richardson advised the accused that he didn't have to talk to her or answer any questions. The purpose of the discussion was to inquire into the sexual abuse of the accused's daughter by him. And she further informed the accused that if she was subpoenaed to testify in a criminal proceeding, she would be required to reveal the substance of any disclosures made to her by the accused. I find that her testimony was clear, candid, and credible, with respect to how any conversation developed between her and the accused on the 21st of August. And I find that she asked the accused if he had any questions regarding these matters before interrogating him—if you want to term it an interrogation—and the accused indicated he had no questions and made it clear that he was willing to discuss the alleged sexual abuse between

himself and his daughter. I find that all disclosures made by the accused to Mrs. Richardson, in the presence of Specialist Westcott, were not made in violation of any of the accused's rights against compulsory self-incrimination and may be properly testified to by Mrs. Richardson during the course of the Government's case should she be called as a witness. I find that, by a preponderance of the evidence, that those disclosures to Mrs. Richardson were made voluntarily. That that evidence was not obtained by use of the statement—that is—I stand corrected—I find that the statement was made voluntarily, and that the statements made to Mrs. Richardson would clearly have been obtained even if the accused had not made an initial disclosure to Sergeant Bacote. Therefore, statements to Mrs. Richardson as far as I'm concerned, are not derivative evidence that need to be suppressed. I, therefore, find the accused's statements to be voluntary by a preponderance of the evidence and the defense motion to suppress any statements made by the accused to Mrs. Richardson or Specialist Westcott is denied.

Any questions, trial counsel?

TC: No, Your Honor.

MJ: Defense counsel?

IDC: No, Your Honor.

MJ: Very well. What it boils down to, counsel, is that you can use the initial disclosure to the Company Commander and nothing further from that conversation—she didn't lay a foundation. And you can use any disclosures made to Mrs. Richardson in the presence of Specialist Westcott. Everything else is suppressed. Let's take up your next motion, defense.

(Emphasis added.)

The military judge later heard additional defense witnesses on this motion. The judge then stated:

With regard to the defense motion to reconsider the previously litigated motion to suppress various statements made by the accused on 16 and 21 August 1989, I

make the following additional findings of fact and conclusions of law:

One, on 16 August 1989, when the accused was happened upon by his wife while in the process of putting on his trousers he became, quote, motivated, unquote, to get help. He did so because he knew his wife would make the incident public very fast. See medical records attached to the Defense Exhibit—excuse me—Appellate Exhibit XVI. Two, I reaffirm my original finding of fact that there's no evidence been adduced that the accused's chain of command would be told of the sexual abuse allegedly perpetrated by the accused, prior to the time the accused made the statement to his Company Commander, Captain Bockenstedt, to the effect that he had turned himself in for molesting his daughter.

Three, with regard to the testimony of the accused's wife, Mrs. Pae Kline, rendered this morning in this reconsideration hearing, it's clearly my impression that she is at this time protective of her husband and reluctant to say anything that might prejudice his case. I note that that is not unusual in cases of this sort.

I would like to make some additional comments because this has been a hard fought motion, and I'm sure that counsel for both sides have undertaken an effort to establish a good record, and I think that that has been well done. But I want both counsel to understand the basis for my ruling, because I'm not sure that was entirely understood as I read various documents that have been submitted. I want to make it clear, with regard to the suppression of the statement to Sergeant Bacote, it was the conclusion of this court, as a result of her testimony, that that testimony presented information sufficient to establish that she felt that the accused was a suspect during the course of the phone conversation. That is, a subjective feeling on her part, based upon her gut reaction, that's been already addressed. And in view of that, I ruled that warnings were necessary and

that warnings were not given. And in support of that position I simply would mention a *Leiffer* case, L–E–I–F–F–E–R, at 13 MJ 337, the *Levine* [sic] case, L–E–I–V–I–N–E [sic], at 13 MJ 150, and the *Lewis* case at 12 MJ 205. My analysis, with respect to the suppression of her statements ends there.

Next, with regard to the statements to Mrs. Richardson, I simply want to make sure that counsel understand that I, in my findings of fact, made some mention of the fact that there may exist an issue regarding whether she was required to warn, and cited the *Moreno* case, which is still on review. I additionally want to make it clear that with respect to my findings of facts and conclusions of law regarding the statements to Richardson, that I'm satisfied that Mrs. Richardson warned the accused. Because she, one, informed him of the nature of the accusation against him. Two, informed him that he did not have to make any statement regarding the offenses of which he was suspected. And, three, clearly informed him that if subpoenaed, that anything he told her could be repeated by her if she was called to testify in a criminal proceeding, which informed the accused of the consequences of speaking. I'm satisfied that her testimony established that the accused understood that information and that the accused freely, knowingly, and intelligently waived any rights that he had at that time prior to providing Mrs. Richardson with the statements that he did.

Finally, based upon the earlier findings of fact and conclusions of law, which I reaffirm at this time, I will not suppress the Article 32 testimony of [JK].

Since I'm satisfied the information that came to Richardson's attention, and Captain Bockenstedt's attention, would have led to the obtaining of the information from [JK]. Succinctly stated, I reaffirm my original decision in all respects.

That concludes this court's ruling on the motion to suppress in this case.

The government evidence first challenged on this appeal is testimony from Captain Randall Bockenstedt, appellant's company commander. He testified that on August 16, 1989, appellant came to his office and told him "that he had just turned himself in for sexually molesting his daughter." In addition, admission of testimony from a second government witness, Judith Ann Richardson, is also challenged by appellant. She was a social worker with Children's Protective Services for the State of Washington. She testified to an interview of appellant on August 21, 1989, as follows:

He told me that he had, in fact, victimized his daughter sexually for approximately the last four years. That it had started when the family lived in Indiana, to include oral sex between he and [J], to include a great deal of fondling, and that this was something that he had performed on [J] three or four—three or four times in the last three or four months, that is, from May 1989, when he had apparently—when the family had returned to Fort Lewis. And that there had been three or four sexual encounters between he and [J] during that time.

Appellant challenges admission of the testimony of both these witnesses on the basis of Article 31, UCMJ, 10 USC § 831. First, he claims that his statement to Captain Bockenstedt was an immediate result of his earlier unwarned and inadmissible statement to Sergeant Bacote. *Cf. United States v. Vitale*, 34 MJ 210. Second, he claims that his later pretrial statements to Mrs. Richardson were also a belated product of his unwarned statements to Sergeant Bacote. *See United States v. Phillips*, 32 MJ 76 (CMA 1991). Finally, he contends that Mrs. Richardson was an agent of military law enforcement who was required to give appellant Article 31 rights warnings before eliciting his statements on August 21, 1989. *United States v. Quillen*, 27 MJ 312, 314 (CMA 1988); *United States v. Penn*, 18 USCMA 194, 199, 39 CMR 194, 199 (1969).

In resolving the above claims, it is first necessary to consider their legal basis. Article 31 states:

### § 831. Art. 31. Compulsory self-incrimination prohibited.

(a) No person subject to this chapter may compel any person to incriminate himself or to answer any question the answer to which may tend to incriminate him.

(b) *No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.*

(c) No person subject to this chapter may compel any person to make a statement or produce evidence before any military tribunal if the statement or evidence is not material to the issue and may tend to degrade him.

(d) No statement obtained from any person in violation of this article, or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court-martial.

(Emphasis added.)

This Court, relying on Supreme Court precedent, has applied Article 31(d) to confessions which are a product of an earlier statement elicited without proper warnings. *See United States v. Phillips*, 32 MJ at 80; *United States v. Seay*, 1 MJ 201 (CMA 1975); *United States v. Wimberley*, 16 USCMA 3, 9, 36 CMR 159, 165 (1966). *Cf. United States v. Monge*, 1 USCMA 95, 2 CMR 1 (1952). Mil.R.Evid. 304(c)(3), Manual for Courts–Martial, United States, 1984, defines a statement taken in violation of Article 31 as "involuntary," and Mil.R.Evid. 304(a) generally prohibits admission over objection of evidence derived

from such statements. In the present case, the judge ruled that Sergeant Alethia Bacote violated section (b) of Article 31 by failing to advise appellant of his rights under this statute before questioning him as a suspect. *See generally United States v. Quillen, supra; cf. United States v. Loukas,* 29 MJ 385 (CMA 1990).[1] However, he also ruled that appellant's initial admission to Captain Bockenstedt and his subsequent statements to Mrs. Richardson were not derived from Sergeant Bacote's earlier illegality. *See United States v. Spaulding,* 29 MJ 156 (CMA 1989); *United States v. Steward,* 31 MJ 259 (CMA 1990).

■ In view of the above, admissibility of appellant's statement to Captain Bockenstedt turns on whether it "was voluntary considering all the facts and circumstances of the case including the earlier technical violation of Article 31(b)." *United States v. Steward, supra* at 265 (emphasis omitted). Mil.R.Evid. 304(b)(3) similarly states: "Evidence that is challenged under this rule as derivative evidence may be admitted against the accused if the military judge finds by a preponderance of the evidence that the statement was made voluntarily, that the evidence was not obtained by use of the statement, or that the evidence would have been obtained even if the statement had not been made."[2] We agree with the judge and, by implication, the Court of Military Review that appellant's statement to Captain Bockenstedt was not inadmissible derivative evidence.

The military judge found the following facts which are supported by the evidence of record and clearly establish the voluntariness of appellant's statement. *See gen-*

*erally Bryant v. Vose,* 785 F.2d 364, 367 (1st Cir.), *cert. denied,* 477 U.S. 907, 106 S.Ct. 3281, 91 L.Ed.2d 570 (1986). First, appellant on his own initiative utilized military social services as a means to pacify his outraged wife. Second, he frankly, albeit belatedly, identified himself as a child abuser during this phone call in hopes of obtaining professional help for his family as demanded by his wife. Third, shortly after being frustrated in immediately obtaining this assistance and without specific direction from military personnel, he spontaneously contacted his commander to facilitate obtaining the desired treatment. Finally, Captain Bockenstedt himself played no role whatsoever in appellant's sudden appearance at his office or had any idea of appellant's involvement in these crimes prior to the challenged admission. In sum, appellant's unsolicited statement to his company commander was not induced by the official pressure or exploitation required for its exclusion as involuntary derivative evidence. *See United States v. Vitale, supra. See also Greenawalt v. Ricketts,* 943 F.2d 1020, 1027 (9th Cir.1991).

■ Turning to the second piece of challenged evidence, we again agree with the judge that it was properly admissible at this court-martial. *See generally United States v. Steward, supra.* Regardless of whether Mrs. Richardson had a duty to inform appellant of his Article 31 rights, she nonetheless complied with this codal provision prior to his interview. *See Duckworth v. Eagan,* 492 U.S. 195, 203, 109 S.Ct. 2875, 2879–80, 106 L.Ed.2d 166 (1989). She told appellant that first, he was sus-

---

1. We do not review the propriety of this ruling today but we note the following. Sergeant Bacote was a Child Abuse Case Manager at Madigan Army Medical Center. She was assigned to the Social Work Services Office and, on referral, interviewed families with child abuse for the Family Advocacy Committee. That committee devised treatment plans for these families. Sergeant Bacote coordinated her investigation with the CID. She was answering telephones at the Social Work Services Office on August 16, 1989, and filling out referral forms based on the calls she received. Appellant admitted molesting his daughter before he identified himself to Ser-

geant Bacote but he subsequently identified himself at her request.

2. Mil.R.Evid. 304(b)(3) is worded somewhat awkwardly in view of *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), and this Court's decision in *United States v. Steward,* 31 MJ 259 (1990). Moreover, there is no Federal Rule of Evidence comparable to Mil.R.Evid. 304(b)(3). In any event we have construed this rule as being fully consistent with our decisions. *See United States v. Phillips,* 32 MJ 76, 80–81 (CMA 1991).

pected of sexual abuse of his daughter; second, he did not have to speak with her or answer any of her questions; and third, that anything he said could be repeated by her in court.[3] In addition, the military judge found as fact that appellant, 5 days after his initial admission, was still motivated to cooperate in this interview because of the demands of his outraged wife. *United States v. Spaulding*, 29 MJ at 161; *United States v. Wheeler*, 22 MJ 76 (CMA), *cert. denied*, 479 U.S. 827, 107 S.Ct. 106, 93 L.Ed.2d 55 (1986); *Greenawalt v. Ricketts, supra* at 1027. In view of all these circumstances, his deliberate and informed decision to cooperate with state authorities rendered his statements to them voluntary and admissible. *See Bryant v. Vose*, 785 F.2d at 368. *Cf. United States v. Phillips*, 32 MJ 76. *See generally United States v. Williams*, 35 MJ 321 (CMA 1992).

The decision of the United States Army Court of Military Review is affirmed.

Judges COX, CRAWFORD, GIERKE, and WISS concur.

---

**3.** *See* Mil.R.Evid. 305(c), which provides:
(c) *Warnings concerning the accusation, right to remain silent, and use of statements.* A person subject to the code who is required to give warnings under Article 31 may not interrogate or request any statement from an accused or a person suspected of an offense without first:
(1) informing the accused or suspect of the nature of the accusation;
(2) advising the accused or suspect that the accused or suspect has the right to remain silent; and
(3) advising the accused or suspect that any statement made may be used as evidence against the accused or suspect in a trial by court-martial.