**UNITED STATES, Appellee**

v.

**Alessandro R. LICHTENHAN,
Hospitalman Apprentice
U.S. Navy, Appellant.**

No. 93–0986.
CMR No. 92 0250.

U.S. Court of Military Appeals.

Argued April 21, 1994.
Decided Sept. 22, 1994.

For Appellant: *Lieutenant David P. Sheldon,* JAGC, USNR (argued).

For Appellee: *Lieutenant R.W. Sardegna,* JAGC, USN (argued); *Colonel T.G. Hess,* USMC, *Commander S.A. Stallings,* JAGC, USN, *Captain Laulie S. Powell,* USMC (on brief); *Captain Brett D. Barkey,* USMC.

*Opinion of the Court*

GIERKE, Judge:

A military judge sitting as a special court-martial convicted appellant, in accordance

with his conditional pleas of guilty, of attempted larceny of syringes, wrongful possession of drug paraphernalia, preparing false drug requisition forms (4 specifications), and larceny of pharmaceutical drugs (2 specifications) and of supplies, in violation of Articles 80, 92, 107, and 121, Uniform Code of Military Justice, 10 USC §§ 880, 892, 907, and 921, respectively. The approved sentence imposes a bad-conduct discharge and reduction to the lowest enlisted grade. In a lengthy unpublished opinion, the Court of Military Review affirmed the findings and sentence. This Court granted review of the following issues: *

## I

WHETHER APPELLANT'S INITIAL STATEMENTS WERE "SPONTANEOUS" WHEN AN EXPERIENCED LAW ENFORCEMENT OFFICER ACTING AS A COMMAND INVESTIGATOR, WHO SUSPECTED APPELLANT OF STEALING DRUG SYRINGES, APPROACHED APPELLANT AND ENGAGED HIM IN A CONVERSATION AND NONETHELESS FAILED TO ADVISE APPELLANT UNDER ARTICLE 31(b) OF HIS RIGHT TO REMAIN SILENT.

## II

WHETHER APPELLANT'S STATEMENTS OBTAINED BY NIS AGENTS WERE "A PRODUCT OF THE EARLIER ARTICLE 31(b) VIOLATIONS" BECAUSE THE STATEMENTS WERE OBTAINED ONLY THREE DAYS AFTER AN INITIAL ARTICLE 31(b) VIOLATION, AND, DESPITE HAVING A SWORN AFFIDAVIT WHICH DETAILED THE AFOREMENTIONED ARTICLE 31(b) VIOLATIONS, NIS FAILED TO GIVE REQUIRED "CLEANSING" WARNINGS.

* We also granted review of the issue pertaining to independence of the appellate military judges who heard appellant's case. This issue was resolved in favor of the Government in *United*

## III

WHETHER THE COURT BELOW ERRED IN RELYING UPON UNSUBSTANTIATED CONCLUSIONS IN APPLYING THE INEVITABLE DISCOVERY RULE.

At his trial appellant made timely motions to suppress his statements to Hospital Corpsman Chief (HMC) Paterson and his subsequent written confession to agents of the Naval Investigative Service (NIS). After the military judge denied the motions to suppress, appellant entered conditional pleas of guilty pursuant to RCM 910(a)(2), Manual for Courts–Martial, United States, 1984. The Court of Military Review held that appellant's statements to HMC Paterson were spontaneous and therefore, not illegally obtained even though they were not preceded by rights' warnings in accordance with Article 31(b), UCMJ, 10 USC § 831(b). That court also held that appellant's statements to the NIS were untainted by appellant's previous admissions to HMC Paterson, even though they were not preceded by "cleansing" warnings. We agree with the Court of Military Review's holdings regarding appellant's statements and resolve Issues I and II against appellant. Based on our resolution of Issues I and II, Issue III is moot.

### *Factual Background*

Appellant was assigned as an emergency medical technician at the Naval Hospital in Oakland, California. In January of 1991, HMC Paterson was investigating several thefts from the emergency room. In the course of his investigation he apprehended appellant, searched him, and found a vial of Nubain and a vial of Stadol in his belt pack. HMC Paterson questioned appellant about the drugs, and appellant explained that "they were just drugs they used in the ER." HMC Paterson testified that he "didn't think anything further of it at the time." Appellant was released from custody and apparently never charged.

*States v. Mitchell,* 39 MJ 131 (CMA), *cert. denied,* — U.S. ——, 115 S.Ct. 200, 130 L.Ed.2d 131 (1994).

On February 4, 1991, HMC Paterson received a report that appellant had unsuccessfully attempted to obtain a box of syringes from the intensive care unit. He approached appellant outside the hospital, near an engraving shop, and said, "Hey, you got a minute to talk?" He did not advise appellant of his rights under Article 31(b), because he merely intended "to find out if the incident had actually occurred." HMC Paterson's information was "third-hand information" which "wasn't all that clear and specific." HMC Paterson had appellant "as a suspect in mind," but he "wasn't absolutely sure that a crime had actually been committed at that point." He did not intend to warn appellant of his rights. HMC Paterson explained: "Since the theft hadn't been consummated, I wasn't really too interested in filing any additional charges."

As soon as HMC Paterson asked appellant, "[Y]ou got a minute to talk?," appellant responded, "Sure, chief, but there's something I need to talk to you about first." They walked about ten feet into the engraving shop and sat down. HMC Paterson said, "Go ahead." Appellant then told HMC Paterson that "he needed help." HMC Paterson asked, "Help with what?" Appellant then told HMC Patterson that "he had been taking Nubain and Stadol drugs from the pharmacy and injecting them intravenously and wanted help because he wanted to salvage his Navy career and he was concerned about the damage the drugs were having upon his body."

HMC Paterson told appellant to stop talking because "it had completely caught me off guard." HMC Paterson told appellant, "Well, that's not why I am here to talk to you but would you put it down on a voluntary statement for me." HMC Paterson told appellant that he had intended to talk to him "about his attempting to take a box of syringes off of the ICU." Appellant responded by telling HMC Paterson "that he would use the syringes to inject the drugs." In compliance with HMC Paterson's request, appellant provided a handwritten statement repeating his oral admissions to HMC Paterson.

Later in February, 1991, the Naval Hospital received a report from security personnel at Treasure Island, advising that a Mrs. Thomas had reported finding a syringe and empty vials labeled Nubain and Stadol in her house on Treasure Island. Appellant was living with the Thomas family in military housing at Treasure Island.

After the NIS received both HMC Paterson's report and the Treasure Island report, appellant was interviewed by NIS agents on February 7, 1991, and made a full confession. The confession was preceded by advising appellant of his rights under Article 31(b) and his right to counsel, and appellant waived his rights in writing. Appellant was not given a "cleansing" warning, i.e., a warning that his unwarned statements to HMC Paterson could not be used against him.

In his written confession to the NIS, appellant said that on February 4, he "went to the chapel in the hospital to pray and something clicked in [his] head that [he] needed to talk to someone about what [he] was doing." Appellant said that he went to work and at approximately 10:30 a.m., HMC Paterson approached him. Appellant then described his conversation with HMC Paterson, including his admission to use of Nubain and Stadol. Appellant admitted taking Nubain and Stadol from the hospital pharmacy, stealing syringes, and using the drugs by injection. He also admitted preparing drug requisitions in order to obtain Nubain and Stadol for his personal use.

At trial the military judge granted appellant's motion to suppress his admissions to HMC Paterson regarding his attempt to procure syringes from the intensive care unit. He denied the motion to suppress appellant's admissions to HMC Paterson regarding "unlawful requisitioning and use of Nubain and Stadol." He denied the motion to suppress appellant's confession to the NIS. The military judge observed that the confession "may have been the product of the accused's unwarned admissions to HMC Paterson," but he made no findings of fact in that respect, relying instead on the doctrine of inevitable discovery. The military judge made no express ruling on appellant's motion to sup-

press "the entire NIS investigation," but his ruling on admissibility of appellant's statements to HMC Paterson and NIS mooted that portion of the motion to suppress, since the basis of appellant's motion was that the subsequent NIS investigation was tainted by appellant's illegally obtained admissions.

Appellant then entered conditional pleas of guilty, preserving the right to withdraw his guilty pleas if it were determined on appellate review that his statements to HMC Paterson, his written confession to NIS, or the drug requisition forms were inadmissible.

The Court of Military Review agreed with the military judge's finding that appellant's oral admission to HMC Paterson of drug use was spontaneous and not required to be preceded by Article 31(b) warnings. That court also agreed with the military judge's ruling that appellant's written statement, which he provided to HMC Paterson on February 4, was inadmissible because it was obtained in violation of Article 31(b).

The Court of Military Review rejected the military judge's application of the doctrine of inevitable discovery to appellant's confession to the NIS, but held that the evidence of record established by a preponderance of the evidence that the statement was voluntary. The court further held that the drug requisition forms would have been inevitably discovered even if HMC Paterson's violations of Article 31(b) had not occurred. Unpub. op. at 4–7.

*Issue I—The Statements to HMC Paterson*

■ Appellant argues that HMC Paterson suspected him of an offense and encouraged him to talk without warning him of his rights. The Government argues that appellant's initial statement to HMC Paterson was spontaneous and not required to be preceded by rights' warnings.

Mil.R.Evid. 305(c), Manual, *supra*, prohibits interrogation of an accused or a person suspected of an offense by "a person subject to the code who is required to give warnings under Article 31" without first advising that person of their rights under Article 31(b). Mil.R.Evid. 305(b)(2) defines interrogation to include "any formal or informal questioning

in which an incriminating response either is sought or is a reasonable consequence of such questioning." Mil.R.Evid. 305(a) provides that "a statement obtained in violation of this rule is involuntary and shall be treated under Mil.R.Evid. 304." Mil.R.Evid. 304(a) provides that "an involuntary statement or any derivative evidence therefrom may not be received in evidence against an accused who made the statement if the accused makes a timely motion to suppress or an objection to the evidence under this rule."

■ By its terms, Mil.R.Evid. 305(c) is applicable only if Article 31 is applicable. Spontaneous statements, even though incriminating, are not within the purview of Article 31. *United States v. Vitale,* 34 MJ 210, 212 (CMA1992).

We hold that the military judge did not abuse his discretion by admitting appellant's statement to HMC Paterson that he had been intravenously using drugs, because the statement was spontaneous. The uncontroverted evidence established that HMC Paterson approached appellant, intending to question him about his attempt to obtain a box of syringes, but before HMC Paterson could begin questioning appellant, appellant preempted the conversation by saying that "there's something I need to talk to you about first," and then asking for help. It was only after HMC Paterson responded to appellant's request for help that appellant admitted his intravenous drug use. HMC Paterson was not interrogating appellant; he was responding to appellant's initial request to talk and subsequent request for help.

*Issue II—The Written Confession
to NIS Agents*

■ Appellant asserts that his written confession to NIS agents was tainted by his earlier unwarned and inadmissible statements to HMC Paterson. He argues that his written confession was tainted because it was obtained only 3 days after the conversation with HMC Paterson and was not preceded by "cleansing" warnings.

■ We hold that the absence of a "cleansing warning" did not make appellant's

**470**

confession inadmissible. Where there has been no "actual coercion" and an earlier statement is "involuntary" only in the sense of a failure to give required warnings, there is no presumptive taint. *Oregon v. Elstad,* 470 U.S. 298, 309, 105 S.Ct. 1285, 1293, 84 L.Ed.2d 222 (1985). *See also United States v. Murphy,* 39 MJ 486 (CMA1994); *United States v. Marquardt,* 39 MJ 239 (CMA1994). The voluntariness and admissibility of the subsequent statement is determined by the totality of the circumstances surrounding the subsequent statement. *United States v. Phillips,* 32 MJ 76, 80 (CMA1991). A cleansing warning is not a prerequisite to admissibility. An earlier, unwarned statement and the absence of a "cleansing" warning before the subsequent statement are circumstances to be considered in determining voluntariness of the subsequent statement. *Id.*

All the evidence in this case indicates that appellant was willing—even anxious—to disclose his drug problem. Accordingly, we hold that the military judge did not abuse his discretion by admitting appellant's confession to the NIS agents.

### Issue III—Inevitable Discovery

In light of our disposition of Issues I and II, we need not determine whether the Court of Military Review erred in relying on the doctrine of inevitable discovery to uphold admissibility of the false drug requisitions. Appellant's trial objection to the evidence was based on the premise that the NIS investigation in its entirety was tainted by appellant's unwarned admissions to HMC Paterson. Since we hold that appellant's admission of drug use to HMC Paterson and his comprehensive confession to NIS agents were admissible, the issue regarding inevitable discovery is moot. The evidence was obtained as a result of appellant's oral admission to HMC Paterson and written confession to the NIS, which were properly obtained and was, therefore, admissible.

### Decision

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judges COX, CRAWFORD, and WISS concur.

SULLIVAN, Chief Judge (dissenting):

The majority opinion has some basic appeal because the record is laced with indications of appellant's guilt. However, there are uncontroverted facts in the record that convince me that the judge made a fatal error in not suppressing the initial statements of appellant to the investigating law enforcement officer (Chief Paterson). It was an error that causes the delicate house of cards which the prosecution built to fall. Since I cannot ignore these facts and the clear mandate of Article 31, Uniform Code of Military Justice, 10 USC § 831, I must vote to reverse the decision below.*

The facts are:

1. Prior to the February 4 arrest of appellant, Chief Paterson had already arrested appellant once before for possession of Nubain and Stadol.

2. When Paterson went to speak with appellant on February 4, Paterson "had him as a suspect in mind."

3. In an uncontroverted sworn statement to NIS, appellant stated that on the morning of February 4, when he was on his way through the main gate to the hospital, "Chief Paterson saw me and told me he was going to talk with me today. I said OK and went to the hospital. I went to the chapel in the hospital to pray and something clicked in my head that I needed to talk to someone about what I was doing."

4. After the chapel incident, Chief Paterson approached appellant and said, "Hey, you got a minute to talk?" Appellant said, "Sure,

---

* "It is better that ten guilty persons escape than one innocent suffer." Sir William Blackstone, *Commentaries on the Laws of England,* Book IV, Chapter 27 (1765), *quoted in The Oxford Dictionary of Quotations* 110 (4th ed.1992). In the case at bar, a judge cannot ignore the law in order to uphold a conviction in violation of it. Article 31, Uniform Code of Military Justice, 10 USC § 831, is too valuable a protection for the members of the Armed Forces or this Court to sacrifice it for this flawed conviction.

Chief but there's something I need to talk to you about first." The Chief lead appellant into an engraving shop about 10 feet away and sat down in a chair and said, "Go ahead." This is when appellant confessed to taking Nubain and Stadol.

5. At the suppression hearing when asked about the confrontation of appellant on February 4, Chief Paterson said "I had laid a trap in——."

In my view, this factual setting is anything but a "spontaneous" statement as held by the majority. *United States v. Harvey*, 21 USCMA 39, 46, 44 CMR 93, 100 (1971). A true view of this case and the application of Article 31 reveals that Chief Paterson should have given Article 31 warnings to appellant prior to saying, "Go ahead." *See United States v. Dowell*, 10 MJ 36 (CMA1980). There was plenty of time to do so in this situation, and any reasonable law enforcement agent setting up an interview in this manner with a suspect would have given the warnings. *United States v. McCrary*, 18 USCMA 104, 39 CMR 104 (1969). The judge erred in not suppressing the confession of the 4th of February, and the majority cannot save his ruling on appeal. I would reverse the decision below and keep Article 31 at full strength.