# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

## UNITED STATES

**v.**

## Staff Sergeant JOSE F. OROPEZA, JR.
### United States Air Force

## ACM 38413

## 23 December 2014

Sentence adjudged 2 April 2013 by GCM convened at Royal Air Force Lakenheath, United Kingdom. Military Judge: Jefferson B. Brown.

Approved Sentence: Bad-conduct discharge, confinement for 4 months, and reduction to E-4.

Appellate Counsel for the Appellant: Major Zaven T. Saroyan.

Appellate Counsel for the United States: Captain Richard J. Schrider and Gerald R. Bruce, Esquire.

Before

ALLRED, HECKER, and TELLER
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under Rule of Practice and Procedure 18.4.

ALLRED, Chief Judge:

A general court-martial composed of officer and enlisted members convicted the appellant, contrary to his pleas, of aggravated sexual assault and adultery in violation of Articles 120 and 134, UCMJ, 10 U.S.C. §§ 920, 934.[1] The adjudged and approved sentence consisted of a bad-conduct discharge, confinement for 4 months, and reduction to E-4.

---

[1] The appellant was found not guilty of rape, assault consummated by battery, and unlawful entry, in violation of Articles 120, 128 and 134, UCMJ, 10 U.S.C. §§ 920, 928, 934.

The appellant raises two issues on appeal: (1) whether the military judge abused his discretion in denying a defense motion to suppress the appellant's statements to a Security Forces investigator who did not advise him of his rights under Article 31(b), UCMJ, 10 U.S.C. § 831(b); and (2) whether the military judge abused his discretion in refusing to admit an out-of-court statement by the appellant.

*Background*

The appellant and the victim, Staff Sergeant (SSgt) AE, were assigned on temporary duty (TDY) to an overseas air base. SSgt AE lived on base in a three-bedroom dormitory suite. She shared a bedroom in that suite with SSgt IM,[2] with whom she was close friends. SSgt AE first met the appellant at the overseas TDY location. She found him to be friendly, but she had no romantic or sexual interest in him.

On the night in question, SSgt AE and SSgt IM had been drinking and socializing off base and then were drinking in their dormitory room with another service member, Senior Airman (SrA) JP. Sometime around 0030, the appellant came by uninvited. The appellant found the atmosphere at SSgt AE's dormitory dull and repeatedly asked her and SSgt IM to join him at a party in the male dormitory across the street. SSgt AE grew agitated at these repeated requests, and finally yelled, "I'm not going, get out." The appellant then departed her room.

By this time, SSgt AE had been drinking so heavily that, while she was able to function and interact with others, she was unable to retain normal memory of the events. Her speech was slurred, she was unable to form complete sentences, and she passed out while sitting on her bed sometime during the early morning hours.

In her testimony, SSgt AE recalled waking sometime later to find the appellant having sexual intercourse with her. She tried to roll away but could not. She put her hands against his chest and told him to stop, but he did not immediately do so. Eventually, the appellant left her room. When she was able to collect her wits and dress herself, SSgt AE walked to another dormitory and reported the matter to a friend, leading to notification of command and medical authorities and apprehension of the appellant.

Additional facts related to the appellant's assignments of error are addressed below.

---

[2] By the time of trial, SSgt IM had transferred to the United States Army and was serving in the rank of Warrant Officer 1.

*Defense Motion to Suppress Statements to Security Forces Investigator*

Upon learning of the alleged sexual assault of SSgt AE by the appellant, his detachment commander, Lieutenant Colonel (Lt Col) RE, ordered subordinates to help find him. Receiving word that the appellant had been seen reentering the female dormitory, Lt Col RE went to that building. Entering the outer area of the suite belonging to SSgt AE and SSgt IM, Lt Col RE heard a female voice coming from one of the bedrooms, loudly saying, "No, no, no. Get out!" Concerned the appellant might be involved in some further impropriety, Lt Col RE yelled for him to come out. Hearing his commander's voice, the appellant emerged from the bedroom of SSgt AE and SSgt IM. He smelled of alcohol and appeared intoxicated. Lt Col RE told the appellant to leave the building. Before he asked the appellant any questions, the appellant mumbled the words "lawyer" and "lawyer up." He also stated, "I did nothing wrong. I have my own witness," or words to that effect. Lt Col RE advised the appellant to remain silent, asked him no questions, and drove him to his office.

The overseas base in question had no confinement facility. Upon reaching his office, Lt Col RE contacted the Security Forces noncommissioned officer, SSgt RW, told him he suspected the appellant had committed a sexual assault, and asked for his assistance in making custody arrangements for the appellant. Without knowing the appellant had previously given some indication of wanting a lawyer, SSgt RW met the appellant, introduced himself as a member of Security Forces, and asked him if he understood the situation. The appellant responded he did not know why he was in custody but he had an idea. SSgt RW responded, "OK. I can accept that" or words to that effect.

SSgt RW asked the appellant no further questions but, after a pause, the appellant declared "it was a bad idea" and someone was "trying to set me up" or words to that effect. In response to these comments, SSgt RW stopped the appellant and advised him of his rights under Article 31, UCMJ. The appellant then invoked his rights to counsel and to remain silent, and SSgt RW ceased any further discussion with him.

The appellant does not challenge the admission of the statements he made to his commander, Lt Col RE. On appeal, however, he asserts the military judge abused his discretion when he refused to suppress the appellant's statements to SSgt RW.

"A military judge's denial of a motion to suppress a confession is reviewed for an abuse of discretion." *United States v. Chatfield*, 67 M.J. 432, 437 (C.A.A.F. 2009) (citing *United States v. Pipkin*, 58 M.J. 358, 360 (C.A.A.F. 2003)). Under this standard, the military judge's findings of fact are upheld unless they are clearly erroneous or unsupported by the record; however, we review de novo any conclusions of law supporting the denial of a motion to suppress a confession. *Id.* "A military judge abuses his discretion when (1) the findings of fact upon which he predicates his ruling are not

supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

Article 31(b), UCMJ, states:

> No person subject to this chapter may interrogate, or request any statement from, an accused or a person suspected of an offense without first informing him of the nature of the accusation and advising him that he does not have to make any statement regarding the offense of which he is accused or suspected and that any statement made by him may be used as evidence against him in a trial by court-martial.

Thus, if a person subject to the UCMJ interrogates or requests any statement from a person suspected of an offense, the questioner must advise the person of his or her rights under Article 31(b), UCMJ. Our superior court has repeatedly affirmed that spontaneous statements, although possibly incriminating, are not within the bounds of Article 31. *See, e.g.*, *United States v. Lichenhan*, 40 M.J. 466, 470 (C.M.A. 1994); *United States v. Vitale*, 34 M.J. 210, 212 (C.M.A. 1992).

In ruling upon the defense motion to suppress, the military judge made detailed findings of fact. These include the following:

> The government only intends to offer the Accused's statements to [SSgt RW] that "it was a bad idea" and he "knew who set him up." The government does not intend to admit the Accused's response to whether he knew why he was there . . . a response that would have limited relevance regardless of the rights advisement issue.

> Although the statements at issue did follow the "do you know why you are here" question chronologically, all of the facts and circumstances make it clear that the Accused's statements were not in response to that initial, preliminary question. There was a pause between the Accused answering if he knew why he was here, and his statements at issue here. In addition, the Accused's statements of "it was a bad idea" and he "knew who set him up" were in no way responsive to [SSgt RW's] original "do you know why you are here" question.

Furthermore, as [SSgt RW] was unaware of the Accused's prior "lawyer up" comments, this was not an investigative technique to frustrate the Accused's efforts to invoke his rights. [SSgt RW] was talking to the Accused to determine whether the Accused intended to make a statement or to invoke. After the Accused began to volunteer spontaneous and unexpected statements, [SSgt RW] affirmatively read the Accused his Article 31 rights and immediately stopped all questions upon the Accused's invocation of his rights.

Although the Accused did not testify on this motion, a reasonable person would not have interpreted [SSgt RW] as badgering or disregarding a desire to speak to counsel before providing a statement. The Accused never told [SSgt RW] that he desired an attorney, and considering that [Lt Col RE] never questioned the Accused and affirmatively told the Accused to be quiet, [SSgt RW] was the first person who was responsive to any statements ….

The military judge concluded:

Both of the Accused's statements to [Lt Col RE] and [SSgt RW] were unsolicited statements that the Accused voluntarily chose to make. They were not the result of badgering or investigative techniques designed to illicit an incriminating response. Though the Accused may have wanted to consult with counsel, it is clear that he also, independently, made a conscious choice to make several unsolicited and voluntary statements to [Lt Col RE] and [SSgt RW].

The findings of fact upon which the military judge predicated his ruling were supported by the evidence of record and therefore were not clearly erroneous. Furthermore, the military judge used correct legal principles, and his application of those principles to the facts was reasonable. The appellant was suspected of an offense within the meaning of Article 31(b), UCMJ, at the time he made the statements to SSgt RW in question. We are satisfied, however, that the statements were uttered spontaneously, voluntarily, and without coercion, and thus were admissible.

The testimony at trial demonstrates SSgt RW asked the appellant "do you know why you are here?" to make sure he knew why he was involved with a member of the Security Forces, and not for the purpose of interrogation. SSgt RW testified, credibly in

our opinion, that he "wanted to make sure [the appellant] understood the situation that he was there for; just to keep things civil." Beyond this, SSgt RW did not initiate any questioning or interview. All indications are that SSgt RW was, at the time in question, neither prepared to conduct an interview of the appellant nor had any intention of doing so. His conduct cannot be interpreted as a tool to elicit incriminating evidence or a functional equivalent of interrogation. His actions left him under no duty to give the appellant Article 31(b) warnings. *See Vitale*, 34 M.J. at 212.

Moreover, even if we assume the military judge erred in admitting the appellant's statements to SSgt RW, we find his conviction should be upheld because the appellant was not prejudiced by the admission of those statements. *See United States v. Cohen*, 63 M.J. 45, 54 (C.A.A.F. 2006) (holding that a conviction will be upheld despite an Article 31 rights violation where there is no prejudice to the appellant). This is not a case in which the suspect's contested statements amounted to a confession or were otherwise highly incriminatory. Here, the appellant's ambiguous comments—that "it was a bad idea" and he "knew who set him up"—did little, if anything, to inculpate him. The comments received only scant mention from trial counsel during findings argument, and they appear to have played, at most, a very minor role in the overall court-martial.

Far more damaging to the appellant was the implausible rendition of events he offered at trial. In his testimony, the appellant conceded he knew SSgt AE was married and had never been romantic or flirtatious with him in any way. He admitted entering SSgt AE's bedroom without invitation from either her or her roommate, and he could offer no legitimate explanation for doing so. He further admitted he crawled uninvited into bed with SSgt AE but claimed he never had any thought of sex at the time he entered her dormitory room or got into her bed. The appellant claimed he did not know the victim was less than fully alert, despite compelling evidence that he was aware she was highly intoxicated. The appellant further testified that he engaged in sexual intercourse with SSgt AE only after she spontaneously initiated sex with him.

In contrast, the victim's account was credible. She reported the incident shortly after it happened and was highly upset when she did so. There was neither indication of bias on her part nor a motive to testify falsely. Moreover, her testimony was corroborated by compelling physical evidence. SSgt AE was menstruating and wearing a tampon at the time of the incident. All indications were that she disliked and avoided sex during menstruation and would not have consciously engaged in intercourse under these circumstances. A medical examination following the alleged assault found the appellant's DNA on the tampon which was now lodged so deep inside her vaginal canal as to require medical extraction. Trial counsel argued persuasively that this lodging of the tampon could only have occurred if SSgt AE were less than fully alert at the time of penetration.

For the foregoing reasons, we find no material prejudice to any substantial right of the appellant from the admission of his statements to SSgt RW.

*Military Judge's Refusal to Admit Out-of-Court Statements of the Appellant*

The sexual assault alleged in this case occurred in the early morning hours of 1 June 2012. On 2 June 2012, local civilians conducted a medical examination of the appellant. During that examination, he told the medical personnel that the alleged victim had consented and actively participated in their sexual activity.

At his trial, the appellant sought to introduce the civilian medical report containing his rendition of what occurred on the night in question. In response to a hearsay objection by the Government and after the appellant testified, defense counsel argued the statements were admissible to rebut a charge of recent fabrication, pursuant to Military Rule of Evidence (Mil. R. Evid.) 801(d)(1)(B). The military judge sustained the prosecution objection, and the appellant now asserts the ruling was erroneous. We disagree.

Mil. R. Evid. 801(d)(1)(B) provides for the admissibility of out-of-court statements where the "declarant testifies at the trial or hearing and is subject to cross examination concerning the statement, and the statement is . . . consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." However, as our superior court has noted:

> [T]o be logically relevant to rebut such a charge, the prior statement typically must have been made *before* the point at which the story was fabricated or the improper influence or motive arose. Otherwise, the prior statement normally is mere repetition which, if made while still under the improper influence or after the urge to lie has reared its ugly head, does nothing to "rebut" the charge. Mere repeated telling of the same story is not relevant to whether that story, when told at trial, is true.

*United States v. McCaskey,* 30 M.J. 188, 192 (C.M.A. 1990); *see also United States v. Allison*, 49 M.J. 54, 57 (C.A.A.F. 1998).

A military judge's decision not to admit such evidence is reviewed for an abuse of discretion. *United States v. Springer*, 58 M.J. 164, 167 (C.A.A.F. 2003). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be arbitrary, fanciful, clearly unreasonable, or clearly erroneous."

*United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)) (internal quotation marks omitted).

In the present case, the military judge did not abuse his discretion in excluding the statements. The offered statements were plainly hearsay. Any motive by the appellant to fabricate his story would have arisen as soon as he learned he was suspected of sexual assault, which was shortly after he left the dormitory room at his commander's direction. The fact that a day or so later he denied to medical authorities any wrongdoing did nothing to rebut a charge of recent fabrication. This assignment of error is without merit.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of the appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are

AFFIRMED.

FOR THE COURT

LEAH M. CALAHAN
Deputy Clerk of the Court