# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, TELLITOCCI, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellant**
v.
**Specialist BRANDON S. WILSON**
**United States Army, Appellee**

ARMY MISC 20140386

Headquarters, U.S. Army Special Operations Command, Fort Bragg, North Carolina
Gary A. Loxley, Military Judge

For Appellee:  Colonel Kevin Boyle, JA; Major Robert N. Michaels; JA, Captain Patrick A. Crocker, JA (on brief).

For Appellant:  Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley; JA, Major Kenneth W. Borgnino, JA; Captain Carrie L. Ward, JA (on brief).

15 August 2014

------------------------------------------------------------------------
MEMORANDUM OPINION AND ACTION ON APPEAL
BY THE UNITED STATES FILED PURSUANT TO
ARTICLE 62, UNIFORM CODE OF MILITARY JUSTICE
------------------------------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TELLITOCCI, Judge:

Appellee is charged with one specification of violating a lawful general order, one specification of making a false official statement, two specifications of wrongful use of marijuana, one specification of wrongful possession of marijuana, and one specification of larceny of property of a value of greater than $500.00, in violation of Articles 92, 107, 112a, and 121 Uniform Code of Military Justice, 10 U.S.C. §§ 892, 907, 912a, 921 [hereinafter UCMJ].  This case is before this court pursuant to a government appeal of the military judge's ruling in accordance with Article 62, UCMJ.

At trial, the military judge granted a defense motion to suppress statements by appellee and certain physical evidence. The government claims the military judge abused his discretion in so ruling and requests that this court vacate the military

judge's ruling and order the military judge to admit statements made by appellee and the physical evidence seized from appellee's personal vehicle.

We agree with the government that the military judge abused his discretion when he applied the wrong legal principles in suppressing all of the statements made by appellee on 19 December 2013 and the physical evidence seized on the same date. We will take appropriate action in our decretal paragraph.

## I. BACKGROUND

On 19 December 2013, appellee underwent a privately owned vehicle (POV) safety inspection conducted by Sergeant (SGT) WA, the accused's first line supervisor. Also present, but only observing and not participating in the inspection, was Staff Sergeant (SSG) IH. During the course of the inspection, after checking for the jack and the spare tire, SGT WA noticed the strap of a camera in the rear compartment. Appellee became nervous and covered up the strap with an assault pack, then attempted to close the hatchback door. But since SGT WA did not stand back from the vehicle, the hatchback door struck SGT WA on the head. Appellee then attempted to close the hatch again, but SGT WA prevented the door from being closed.

Sergeant WA then asked appellee, "Whose camera was that?" Appellee said it was his. Sergeant WA next asked if he could examine the camera and appellee handed it to SGT WA. After looking at the camera, SGT WA asked the accused if they could check the serial number against the unit property book and gave the camera back to appellee. Appellee agreed and they proceeded to the company area.

Sergeant WA went back to his normal duties and appellee was escorted to the unit supply room by SSG IH. Upon arrival at the supply room, SSG IH asked the supply sergeant to check the camera against the property book. Appellee then handed the camera to the supply sergeant, but before the check could be made, appellee stated that the camera belonged to the unit and that he had intended to borrow it for the weekend. Appellee also told the supply sergeant that he had other camera accessories belonging to the unit in his POV. Appellee went back out to the car and retrieved a camera lens and storage device,[1] and gave them to the supply sergeant.

When the company leadership was informed, the military police (MPs) were called. Sometime later, but shortly after their arrival, the MPs requested consent from appellee for a search of his POV. Appellee provided a written consent form.

---

[1] This object is referred to in the record variously as an "SD card," a "storage disk," or a "flash memory card chip." For consistency, we will refer to this item as a "storage device" throughout this opinion.

The written form included the language, "[t]his written permission is given to the undersigned [military police investigator] freely, voluntarily, and without threat or promises of any kind. I understand that this consent can be retracted at any time." The subsequent search of appellee's POV revealed drug paraphernalia containing marijuana residue.

Appellate Exhibit III, the military judge's five-page "Findings and Conclusions re: Defense Motion to Suppress Evidence," is attached hereto as Appendix A.

## II. LAW AND DISCUSSION

### A. *Jurisdiction*

Article 62, UCMJ, states, *inter alia:*

> (a)(1) In a trial by court-martial in which a military judge presides and in which a punitive discharge may be adjudged, the United States may appeal the following (other than an order or ruling that is, or that amounts to, a finding of not guilty with respect to the charge or specification):
>
> (A) An order or ruling of the military judge which terminates the proceedings with respect to a charge or specification.
>
> (B) An order or ruling which excludes evidence that is substantial proof of a fact material in the proceeding.

Here, the military judge's ruling has formally excluded "evidence that is substantial proof of a fact material in the proceeding." UCMJ art. 62(a)(1)(B). This court, therefore, has jurisdiction.

### B. *Standards of Review*

When acting on interlocutory appeals pursuant to Article 62, UCMJ, this court may act "only with respect to matters of law" and we may not substitute our own fact finding. *United States v. Cossio,* 64 M.J. 254, 256 (C.A.A.F. 2007).

We review the facts under a clearly erroneous standard and conclusions of law de novo. *United States v. Cohen*, 63 M.J. 45, 49 (C.A.A.F. 2006) (citing *United States v. Swift*, 53 M.J. 439, 446 (C.A.A.F. 2000)).

We review a military judge's ruling on a motion to suppress for abuse of discretion. *United States v. Rodriguez*, 60 M.J. 239, 246 (C.A.A.F. 2004). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)).

## C. *Discussion*

### 1. Statements by the Appellee

Military Rule of Evidence [hereinafter Mil. R. Evid.] 304(a) provides that except in limited circumstances, "an involuntary statement or any derivative evidence therefrom may not be received in evidence against an accused who made the statement if the accused makes a timely motion to suppress or an objection to the evidence under this rule." In this regard, a statement is involuntary "if it is obtained in violation of the self-incrimination privilege or due process clause of the Fifth Amendment to the Constitution of the United States, Article 31 [UCMJ], or through the use of coercion, unlawful influence, or unlawful inducement." Mil. R. Evid. 304(c)(3). "No statement obtained from any person in violation of [Article 31, UCMJ], or through the use of coercion, unlawful influence, or unlawful inducement may be received in evidence against him in a trial by court martial." UCMJ art. 31(d). Once a motion to suppress is brought, the burden is on the government to establish the admissibility of the offered statements. Mil. R. Evid. 304(e).

Here, the military judge found that appellee being "nervous," his attempt to cover the camera strap, and his "futile attempts to close the hatchback door [all] reasonably indicate furtive behavior" such that a reasonable person would have suspected the accused of wrongdoing. Although we might disagree, the military judge reasonably applied the correct legal standard and on balance, under the circumstances of this case, he did not abuse his discretion when he determined that a reasonable person in SGT WA's position should have provided a warning in accordance with Article 31 before questioning appellee about the camera. This failure to warn makes appellee's subsequent statement, "it is mine," by appellee to SGT WA "involuntary" in the sense that it was unwarned. Therefore, the exclusion of the statement to the effect that the camera belonged to appellee was not clearly unreasonable. This does not, however, end the inquiry into the other statements by the accused.

The military judge summarily concluded that the appellee's subsequent admissions resulted because "the accused's will was overborne and his capacity for self determination [was] critically impaired," and ruled that appellee's first statement ("it is mine") was "implicitly coerced" and, therefore, any subsequent

statements or physical evidence, such as the camera lens and the drug paraphernalia, were inadmissible as "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The final paragraph of the military judge's written ruling is illustrative:

> The absence of Article 31(b) rights renders the statements given by the accused inadmissible. Since the accused's statements and verbal acts were obtained based on implicit coercion, the statements are also inadmissible for impeachment purposes. Subsequent evidence obtained, including the camera, lens, [storage device], and paraphernalia, as well as the accused's written consent to search his POV, are fruit of the poisonous tree and are also inadmissible pursuant to [Mil. R. Evid] 304(a).

The military judge provided little or no analysis to support his conclusions, and as such, there is very little to which this court can defer.

The military judge applied incorrect legal principles when ruling that appellee's admissions could not be used for any purpose, including impeachment. The military judge failed to identify and apply the exception found in Mil. R. Evid. 304(b), which explicitly authorizes the use of statements, even if obtained without proper Article 31, or *Miranda* warnings, provided the statement is otherwise voluntary. *Swift*, 53 M.J. 439; *See Miranda v. Arizona*, 384 U.S. 436 (1966).

The voluntariness of a statement is a question of law that we review de novo. *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991); *United States v. Bresnahan*, 62 M.J. 137, 141 (C.A.A.F. 2005); *United States v. Ellis*, 57 M.J. 375, 378 (C.A.A.F. 2002); *United States v. Bubonics*, 45 M.J. 93, 94 (C.A.A.F. 1996). A statement is involuntary, and thus inadmissible, if it was obtained "through the use of coercion, unlawful influence, or unlawful inducement." Mil. R. Evid. 304(c)(3); *see also* UCMJ art. 31(d). In determining whether appellee's "will was over-borne in a particular case" so as to render his statement involuntary, we assess the totality of the circumstances, "considering both the characteristics of the accused and the details of his interrogation." *United States v. Freeman*, 65 M.J. 451, 453 (C.A.A.F. 2008) (quoting *Schneckloth v. Bustamonte,* 412 U.S. 218, 226 (1973)).

The military judge made three findings of fact which arguably implicate the voluntariness of appellee's statements: (1) SGT WA was appellee's first line supervisor; (2) two noncommissioned officers (SGT WA and SSG IH) were present during the inspection; and (3) appellee was kept "under the watchful eye of unit personnel" at all times subsequent to the arrival of the military police. The military judge concluded that these factors resulted in "implicit coercion." It is unclear

which legal principles the military judge applied here, but this conclusion was not supported by the evidence of record.

Under all the circumstances, these facts cannot support a necessary conclusion of law that appellee's statement was involuntary in the sense that it was the product of coercion, unlawful influence, or inducement, which is the prerequisite to precluding use of admissions in impeachment of an accused, notwithstanding failure to advise of Article 31 rights or rights to counsel. Mil. R. Evid. 304(b); *see Swift*, 53 M.J. at 449-50 (explaining the impeachment exception to the rule). As a result, the unwarned statement by appellee regarding the ownership of the camera could be used as impeachment evidence, should the appropriate conditions arise at trial.

After being escorted to the supply room by SSG IH and without further questioning by anyone, appellee spontaneously stated that the camera belonged to the unit and that there were additional camera accessories in his POV. The military judge concluded that these statements were made because the "accused's will was overborne and his capacity for self determination [was] critically impaired." The military judge found no additional facts to support his ruling, nor does the record support a conclusion that appellee's will was overborne. Of particular importance is that the statement made to the supply sergeant was spontaneous and was not made in response to any questions. Furthermore, there was no discussion whatsoever regarding missing accessories or any indication anyone was going to return to the vehicle for any reason. Accordingly, appellee's mention of his purported borrowing and further mention of the accessories were solely a product of his free will and voluntary expression. The military judge should have analyzed this statement using the appropriate legal principles concerning spontaneous statements. Spontaneous statements, even if possibly incriminating, are not protected by Article 31. *United States v. Warren,* 47 M.J. 649, 652 (Army Ct. Crim. App. 1997) (citing *United States v. Lichtenhan*, 40 M.J. 466, 469 (C.M.A. 1994)); *see generally Rhode Island v. Innis*, 446 U.S. 291 (1980). As a result, the military judge abused his discretion in suppressing the statements made to the supply sergeant.

## 2. Physical Evidence

*Lens and Storage Device*: The statements made to the supply sergeant led to a voluntary trip by the accused to the car to retrieve the camera accessories. The military judge provided no legal principles or analysis regarding this physical evidence other than concluding it was part of the "fruit" of the unwarned initial statement. As discussed above, the suppression of the spontaneous statements was improper. Appellee's retrieval of the camera accessories was also spontaneous and also not in response to questioning. There is no factual support in the record or in the military judge's findings indicating appellant's retrieval of these items was anything but voluntary. The military judge abused his discretion and applied the

6

wrong legal standards, as discussed above, in suppressing the camera lens and the storage device.

*Paraphernalia and Drug Residue*:  The military judge's determination that the consent search of appellee's POV was coerced is unsupported by any factual findings or proper legal analysis.  Our superior court has held that "a request for consent to search does not infringe upon Article 31 or Fifth Amendment safeguards because such requests are not interrogations and the consent given is ordinarily not a statement."  *United States v. Frazier*, 34 M.J. 135, 137 (C.M.A. 1992)[2] (citations omitted).

Here, the military judge determined that appellee's *statutory* Article 31 rights were violated.  The military judge focused solely on unwarned statements by appellee—there were no findings or analysis regarding an illegal search or other constitutional violation.  The military judge concluded summarily that: (1) the absence of Article 31 rights warnings made all the appellee's statements inadmissible;  (2) the statements were, therefore, obtained by "implicit coercion;" and (3) all subsequent evidence was "fruit of the poisonous tree" and inadmissible. However, this "fruit" was not from the same tree, nor was it even from the same orchard.  More than three hours after the initial questions by SGT WA, appellee voluntarily consented in writing to a search of his vehicle.  Because the consent to search was not a "statement" of the accused, the military judge applied the wrong legal principles and abused his discretion when he suppressed the drug paraphernalia discovered during the consent search.

*Camera*:  The military judge specifically found that SGT WA was engaged in a lawful inspection when he first observed the camera strap in plain view.  The military judge's suppression was based solely upon the Article 31 rights violation and he conducted little or no 4th Amendment analysis on the record.

The military judge excluded the camera because SGT WA "engaged in questioning without first reading [appellee] his Article 31(b) rights" and, as a result, "the accused was implicitly coerced into complying."  Upon seeing the strap, SGT WA's request was "[c]an I see the camera?"  The military judge found that unless Article 31 rights were read to the accused, SGT WA was prohibited from asking to see the camera.  The military judge conflated the protections of Article 31 with those of the 4th Amendment.  *See United States v. Patane*, 542 U.S. 630, 642 (2004) (plurality opinion) (The 4th Amendment does not compel suppression of physical evidence obtained as a result of a *Miranda* violation.)

---

[2]  Our superior court revisited this issue in *United States v. Hutchins*, 72 M.J 294 (C.A.A.F 2013) wherein the court distinguished and refused to automatically apply this analysis to cover a consent search obtained after an invocation of the right to counsel.

This request to see the camera was neither an interrogation, nor did it call for a verbal response. SGT WA's request to see the camera was not a violation of appellee's rights under Article 31, but was a request to hand over the object attached to the camera strap. The military judge applied the wrong legal principles in suppressing the camera.

Since the request to see the camera was not an interrogation, and did not call for a verbal response, the lack of a prior rights warning under Article 31(b) does not require suppression of the camera.

Instead, the military judge should further develop the facts and conduct the appropriate legal analysis under the 4th Amendment. Sergeant WA asked the accused if he could see the camera. Was this a request for consent? *See Frazier*, 31 M.J. at 137. When did the "legitimate inspection" become a search? In the military judge's written ruling, he identifies three distinct points of time at which the inspection terminated and a search began. Was SGT WA's request out of personal curiosity or was he engaged in disciplinary activities? *See generally United States v. Jones*, 73 M.J. 357 (C.A.A.F. 2014). When the military judge found that "instead of attempting to obtain a valid search authorization based on the facts as he knew them SGT WA began an inquiry" does that mean that SGT WA had probable cause? If so, how does the automobile exception of Mil. R. Evid. 315(g)(3) apply? *United States v. Owens*, 51 M.J. 204, 209 (C.A.A.F. 1999) (citing *Coolidge v. New Hampshire*, 403 U.S. 443 (1971)).

Even if appellee did not consent, the military judge summarily dismissed the doctrine of plain view. Government officials conducting a lawful activity may seize items in plain view if "[the officials] are acting within the scope of their authority, and . . . they have probable cause to believe the item is contraband or evidence of a crime." *United States v. Fogg*, 52 M.J. 144, 149 (C.A.A.F. 1999). *See also United States v. McMahon*, 58 M.J. 362 (C.A.A.F. 2003); Mil. R. Evid. 316(d)(4) ("Property or evidence . . . may be seized for use in evidence . . . if . . . (C) . . . [t]he person while in the course of otherwise lawful activity observes in a reasonable fashion property or evidence that the person has probable cause to seize.").

Was the camera itself ever in plain view? Sergeant WA stated during his testimony that the accused tried to cover the strap with the assault pack, subsequently exposing the camera itself to SGT WA's view. The military judge did not discuss this in his findings. In addition, the camera strap was certainly in plain view at one point and the same furtive behaviors which formed the basis for the military judge's determination that rights warnings were required could support an inference that the object attached to the strap was contraband, if not the strap itself. Therefore, the military judge should conduct the appropriate factual analysis to determine if the camera or the camera strap were in plain view as potential contraband and whether they could have been lawfully examined and seized.

Additionally, the inevitable discovery doctrine may be applicable as a result of the consent to search obtained by the military police later that day. *See generally Nix v. Williams*, 467 U.S. 431, 444 (1984); *United States v. Keefauver*, __ M.J. __, ARMY 20121026, 2014 WL 3734256 (Army Ct. Crim. App. 29 July 2014).

## CONCLUSION

The military judge's suppression of the initial statement made by appellee to SGT WA regarding ownership of the camera was properly within his discretion. However, that statement may be used as impeachment evidence at trial should appropriate circumstances arise.

The subsequent statements to the supply sergeant were improperly excluded. These statements were spontaneous and not in response to questioning and are, therefore, admissible. The storage device and the camera lens are also admissible as they were obtained through spontaneous and purely voluntary acts by the accused.

The drug paraphernalia and residue were improperly excluded as they were obtained pursuant to a lawfully conducted consent search authorized by appellee. They are admissible.

The camera was improperly excluded by the military judge based on the application of incorrect legal standards. In order to properly determine the admissibility of the camera, the military judge should further develop the facts and conduct a 4th Amendment legal analysis consistent with the above discussion.

The appeal of the United States pursuant to Article 62 is granted in part. The military judge's ruling is vacated and the record will be returned to the military judge for action not inconsistent with this opinion

Senior Judge COOK and Judge HAIGHT concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court